## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | |
|---|---|
| HEALTH CHOICE GROUP, LLC and JAIME GREEN, on behalf of the UNITED STATES OF AMERICA; STATE OF ARKANSAS; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF INDIANA; STATE OF IOWA; STATE OF LOUISIANA; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF MONTANA; STATE OF NEVADA; STATE OF NEW HAMPSHIRE; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OKLAHOMA; STATE OF RHODE ISLAND; STATE OF TENNESSEE; STATE OF TEXAS; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA; and STATE OF WASHINGTON,<br><br>  Plaintiffs/Relators,<br><br>v.<br><br>BAYER CORPORATION; AMGEN INC.; ONYX PHARMACEUTICALS, INC.; AMERISOURCEBERGEN CORPORATION; and LASH GROUP,<br><br>  Defendants. | Civil Action No.: 5:17-CV-126-RWS-CMC |

## **RELATOR'S RESPONSE TO DEFENDANTS' THIRD OPPOSED MOTION TO STAY AND ADJOURN THE CASE SCHEDULE FOR EXPEDITED BRIEFING**

This is Defendants' third motion to stay discovery in this case.[1] Defendants yet again move to be relieved of their discovery obligations, and additionally, to vacate the case schedule, despite having made only four document productions at the time of filing their Motion[2] and having failed to fully respond to interrogatories that Relator served eight months ago.

**BACKGROUND**

This case was filed 18 months ago and unsealed 14 months ago.  It alleges that Defendants profited from fraudulent schemes utilizing illegal kickbacks to boost prescriptions and increase profits.  Through these schemes, Defendants' have defrauded the Veterans Administration, Tricare, Medicare, Medicaid, and at least thirty-one States.

Throughout this case, Defendants have sought to thwart the Court's Docket Control Order (Dkt. 64) and their discovery obligations.  The Court has consistently rejected these efforts and confirmed the adequacy of Relator's claims.  In a detailed 115-page Order, the Court rejected Defendants' attempt to dismiss Relator's claims on 12(b)(6) grounds. All previously filed motions to stay have been denied by this Court. Dkt. 76 and Dkt. 99. This most recent effort to stay should be no treated no differently.

The government's motion to dismiss filed in this case (Dkt. 116) should also be denied as discussed in Relator's opposition brief (filed contemporaneously today). Nevertheless, even if the government is ultimately permitted to dismiss this case —and in doing so, forgo recovery for fraud against multiple federal programs intended to benefit public welfare—the States have an

---

[1] *See* Motion to Stay, Dkt. No. 40 (February 23, 2018), Renewed Motion to Stay, Dkt. No. 92 (July 13, 2018), Motion to Stay Discovery and Adjourn the Case Schedule and for Expedited Briefing, Dkt. No. 120 (January 15, 2019).

[2] Instead of producing documents as promised in late fall and eventually, December 2018, Bayer informed Relator it instead intended to file another motion to stay. On Sunday, Bayer's seeming gamesmanship continued, and it made a document production.

independent, compelling interest in recovering the loss incurred as a result of Defendants' fraud. In order to preserve the rights of the States to pursue this interest, this case must proceed on at least state-law claims.

For various reasons, Defendants argue discovery is too burdensome to continue. However, Defendants are themselves the cause for most of their complaints. For example, Defendants complain the fraudulent schemes *they* greatly profited from are too vast to reasonably investigate; that *they* have burdened the government with discovery requests that will consume the government's resources; and that because *they* have not adhered to the Court's discovery schedule *they* are two months out from the end of fact discovery with little progress having been made. Defendants should not be permitted to contrive good cause for a stay and complete adjournment of all case deadlines where there is actually none.

Regardless of the government's new position, it is clear the States' interests in pursuing the claims against Defendants are harmed by a delay. Nevertheless, in light of Defendants' ongoing delay tactics and multiple rounds of motions to dismiss and/or summary judgment in this and the companion *Lilly* matter, Relator is amenable to adjusting the Court's Docket Control Order deadlines four to six months. Dkt. 64. This would allow the case to proceed on behalf of, at minimum, the plaintiff States, and would be consistent with the Court's standard practice of not staying discovery.

As the Court noted in its previous order denying Defendants' second motion to stay discovery:

> District courts have inherent power to control their dockets and manage their cases, including by staying discovery. *United States v. Infilaw Corp.*, No. 616CV970ORL37TBS, 2018 WL 889024, at *2 (M.D. Fla. Feb. 14, 2018). An order staying discovery should only be issued upon a showing of "good cause" by the movant. (Internal citation omitted)

For the following reasons, Defendants have not shown good cause to stay discovery in the case and their motion should be denied.

**ARGUMENT**

**I.      The Government's Motion to Dismiss Is Unprecedented, Contrary to Legislative Intent, and Is Insufficient to Justify a Stay**

Allowing the government's motion to derail litigation, stay discovery and vacate all deadlines will have a chilling effect on meritorious *qui tam* cases, and, ultimately lengthen the course of *qui tam* litigation. The deficiencies of the government's motion are addressed in full in Relator's opposition to that motion. The outcome of this dispute, both in this Court and likely after appeals, will shape policy and the effectiveness of the FCA, which has recovered over $56 billion for fraud since its passage in 1986.[3]

However, until that dispute is fully decided, the mere filing of the government's motion should not be enough to abandon the Court's Docket Control Order. The government examined this case for four months before it declined to intervene, but at no point in the subsequent year and a half did the government assert or even suggest that the case should be dismissed. This Court confirmed the apparent merit of the case by denying Defendants' motion to dismiss on 12(b)(6) grounds. Defendants now seek to exploit the uncertainty caused by the government's motion and stay the case, claiming that the motion is "extraordinarily likely to be granted" and "it is near certainty the Court will grant the Government's motion". Dkt. 120 at 5-6.

But the government's motion is on footing that is far from sure. The DOJ issued new guidance regarding the dismissal of FCA cases in January 2018 in its "Granston Memo." Congress has recently discussed this guidance during the nomination hearings for William Barr

---

[3] *See* Exhibit A (William Barr Attorney General Confirmation Hearing, Senate Judiciary Committee, January 15, 2019).

for the role of Attorney General and expressed serious concerns about how it might be misused. In particular, it is not clear that the sweeping mandates in the Granston memo are consistent with legislative intent and supported by Congress. Indeed, Senator Charles Grassley, who helped pass the FCA in 1986, showed concern about the Granston Memo when questioning Barr and sought assurances that in situations where the government does not intervene that it will not unnecessarily dismiss False Claims Act cases that have merit. Specifically, Senator Grassley noted:

> GRASSLEY: Just to show you that there is some forces out there that I'm suspicious about within the Department of Justice, we have a new Department of Justice guidance document out last year known as about the Granston Memo, provides a long list of reasons that the Department can use to dismiss False Claims Act cases. Some of them pretty darn vague, such as preserving -- these -- these are their words, "Preserving government resources." Just think of all the mischief those three words can bring.
>
> Of course the government can dismiss, obviously, meritless cases -- I don't argue with that. But even when the Department declines to participate in False Claims Act cases the taxpayer can, in many cases, still recovery [sic] financially.
>
> So it's important to allow whistleblowers to pursue cases even when the Department isn't able to be involved.

William Barr Attorney General Confirmation Hearing, Senate Judiciary Committee, January 15, 2019. *See* Exhibit A.

In the most favorable light possible, it is clear the government seeks to ferret out cases without merit. However, the government's ability to end litigation, including discovery, no matter how late in the game, or whether a fact-finding court has determined it has merit—will discourage whistleblowers across the board and allow defendants to commit fraud unchecked. The FCA was created to prevent these very things from happening.  Staying the case under these circumstances would completely undermine the FCA.

## II. Defendants' Claims that Discovery is Burdensome Do Not Constitute Good Cause For Staying the Case

### A. *Bayer is Not Too Big to be Held Accountable for Fraud – And the Size and Scope of its Fraud Should Not be a Rip Cord for its Discovery Obligations*

Defendants' arguments that their fraud was so extensive that it is too burdensome for them to meet discovery obligations stemming from their own misdeeds are unavailing. The scope of Relator's discovery requests are reasonable and appropriate. Nor does Defendants' lack of compliance with discovery obligations to date justify further obstruction and delay. Defendants acknowledge that the alleged schemes have been conducted using four drugs, over multiple programs, and over many years. It is axiomatic that a defense to fraud cannot be that the fraud was so big and successful that it is unduly burdensome to produce documents and responses.

If Defendants have concerns over the scope of discovery and the reality of adhering to the Eastern District of Texas rules on discovery, those concerns are appropriately addressed at a discovery conference or in a discovery motion. As discussed below, if there are concerns regarding the Docket Control Order, those concerns do not warrant an open-ended stay of the entire case.

### B. *The Fact that Defendants Have Burdened the Government with Discovery Does Not Warrant a Stay*

Defendants argue that if the stay is not granted they will be forced to burden the government with overwhelming discovery requests. They state that they have already sent a draft to the government as a warning of what is to come. Dkt. 120 at 7 fn.1. Defendants note that they "hope to spare the Government the burden of having to respond to these requests" however, "Defendants intend to serve the requests pursuant to the Federal Rules of Civil Procedure and the Government's *Touhy* regulations if the motion to stay is denied." Dkt. 120, p. 7 fn.1. Defendants

5

should not be able to use the threat of discovery, permitted under the scheduling order, to attempt to justify a stay.

Defendants further argue another reason a stay is warranted is because the government should not be burdened with a case it does not want to prosecute. Defendants argue that to prove its case Relator "must show that the alleged support services were 'material' to the federal and state governments' payment decisions," an element of proof that will require discovery from various government officials. Dkt. 120 at 7. In this case federal <u>and</u> state governments made payment decisions because of the structure of our Medicare and healthcare systems. Regardless of whether the federal government seeks to recover for fraud at the federal level, as Defendants acknowledge, information in the custody of government officials is likely to be essential to the States in their pursuance of the state-law fraud claims. Accordingly, the need for discovery from the government is inevitable regardless of the federal government's participation, and this purported concern on the federal government's behalf does not justify a stay.

C. *Defendants Ad Hominem Attacks About Duping the Confidential Informants are Misplaced and Irrelevant to Staying Discovery*

Defendants' attempt to rely on disparagement and unwarranted criticism of Relator is ineffective, unnecessary, and untoward. Specifically, Defendants characterize the interview process that was part of Relator's investigation in uncovering Defendants' fraud as a ruse/deceitful. Dkt. 120 at 8. Defendants' opinion of Relator's research techniques has no bearing whatsoever on the adequacy or validity of Relator's claims. Defendants appear to be cobbling together a sort of "fruit of the poisonous tree" defense. This attempt fails. Relator is not an agent of the government, nor are its investigation methods illegal or unethical. Any issues that Defendants have with Relator's fact-finding goes to its credibility and reliability: issues that are properly addressed and adjudicated by a jury, not Defendants. In any event, Relator's

interview process was consistent with widely accepted standards.  The Reference Guide on Survey Research [4] states that confidential interviewees be told they are participating in a survey and not litigation—to maintain the integrity of the data; that is, to prevent interviewees from giving answers they think the interviewer wants to hear. The whole point is to make the process <u>more</u> trustworthy, not less. And this is precisely how Relator conducted its interviews.[5]

In short, the quality of Relator's pre-suit research in no way supports Defendants' motion for a stay.  Moreover, Defendants have known the identity of the confidential informants and had their interview transcripts for months.  It is far too late for them to credibly argue that these research techniques constitute cause to stay discovery that has been proceeding in the months that they were in possession of these materials.  Defendants' attempt to discredit Relator and taint the Court's impression of Relator's character and the integrity of its research process do not support its motion.

D. ***Relator is Amenable to Adjusting Deadlines Despite Defendants' Intentional Delay and Efforts to Evade Discovery***

Although Relator strongly opposes a stay of this litigation, Relator is amenable to adjusting the deadlines for fact discovery and other dates as needed to accommodate a workable schedule.  Defendants' all or nothing approach to staying their discovery obligations and vacating all deadlines is far from the only option for reducing the purported burden of discovery in this action. For example, the current deadlines can be extended four to six months.  Dkt. 64.

---

[4] *See* Shari S. Diamond, Reference Guide on Survey Research, in Reference Manual on Scientific Evidence 359, 410-11 (3d. ed. 2011); *Payton v. Entergy Corp.*, 2013 U.S. Dist. LEXIS 150824, at *18-19 (E.D. La. Oct. 21, 2013) ("The function of [the 'blinding'] procedure is to prevent bias from impacting the survey.  In other words, it is to prevent respondents from giving the answer that they think the interviewer wants to hear.  This is a significant concern in opinion-based surveys.").

[5] *See* MTD, Exh. A-L.

Yet despite Relator's willingness to be flexible, Defendants have repeatedly attempted to stay discovery at every turn. After filing their initial motion to dismiss, Defendants essentially argued discovery should not move forward because they *might* win. That motion to stay was denied. Then, after losing the 12(b)(6) motion, Defendants argued for a stay because the case *might* be dismissed under Rule 9(b). That motion to stay was also denied. Now, Defendants again argue the case *may* be dismissed so they should no longer have to participate in discovery, while ignoring their obligations to continue to Plaintiff States.[6]

Defendants' productions amount to only a fraction of the number of responsive documents expected in a case where a company of this size is accused of perpetuating a systemic fraud for multiple years across multiple programs. Since May 2018, Relator has been unsuccessful in getting Defendants to cooperate fully in discovery. It has sent multiple letters, participated in conference calls, and received assurances during a meet and confer, but to no avail. Defendants still have not answered Interrogatories fully or adequately supplemented their document productions. Unsurprisingly, Relators have been unable to serve deposition notices on the right individuals without documents identifying these persons and providing information about their involvement in Defendants' schemes.

Relator is willing to participate in good-faith negotiations to amend the existing schedule, including moving the dates back a few months. Those discussions are appropriate in a meet and confer or scheduling conference. The complete cessation that Defendants seek is however neither necessary nor justifiable.

---

[6] *See* Dkts. 40, 92, 120. The Court's Docket Control Order contemplated one round of Motions to Dismiss and Motions for Summary Judgment, not a constant barrage that requires the case to be put on hold indefinitely. Relator is amenable to modifying the schedule four to six months as needed. But, an indefinite stay is not necessary or warranted.

**III. Different Circumstances in a Different Court in Pennsylvania with Different Lawyers, and Different Facts, Does Not Control this Case—Because the Cases are Different**

Defendants assert Relator agreed to stay discovery in a separate case, which should be dispositive of what is done in the instant case. But actions taken in unrelated cases with entirely different circumstances have nothing to do with the instant case. Defendants' example involves a different relator entity, different lawyers, a different court, different rulings, in different jurisdictions with different standards, different conduct by the defendants, and different facts. That case has no bearing on the reasonableness of Defendants' motion here.

**IV. Despite Defendants' Assertion to the Contrary, Staying Discovery Will Unduly Burden Relator and the States Involved in this Case**

In all of its motions to stay, Defendants ignore the burden that the stay would cause. This case alleges fraudulent schemes against various federal and state programs. Regardless of the government's new position and the outcome of its motion, the States have also been defrauded by Defendants' schemes. Citing *Von Drake v. Nat'l Broadcasting Co., Inc.,* Defendants argue that the disposition of a motion to dismiss might preclude the need for discovery altogether. This is similar to the unsuccessful arguments Defendants made in their previous motions to stay. Dkts. 40, 92. But as explained *supra*, even if the government's motion to dismiss the federal claims is ultimately granted, the States still have a right to recover for Defendants' fraud against them.

The affected States have not indicated that any of them plan to dismiss their claims even if the federal government does not want to pursue its claims. Even if it were granted, the government's motion to dismiss would impact only Relator's federal claims. It does not end the prosecution or recovery due to taxpayers and citizens in the 31 States represented by Relator for the fraud perpetuated by Defendants. Section 3732(b) of the FCA separately confers jurisdiction over state FCA claims in addition to, and apart from, the general supplemental jurisdiction

statute, 28 USC 1367.[7] Staying discovery will unduly burden these States as well as Relator by causing unnecessary delay, and suspending the case schedule for an unknown duration will be detrimental to Relator's efforts to prosecute the case and adequately represent those who have been injured by Defendants' fraud.

## CONCLUSION

Considering the circumstances of the government's late-in-the case motion to dismiss, the claims being litigated on behalf of the States who have a vested interest in not delaying the litigation, and the fact that Relator is amenable to adjusting the Docket Control Order to allow additional time for fact discovery and other case deadlines, Defendants' Motion to Stay should be denied. Quoting the Court's previous order denying Defendant's previous motion to stay, Defendants' "assertions do not warrant departing from this Court's ordinary practice not to stay Discovery. Defendants still have not sufficiently shown that proceeding with discovery would cause an undue burden. Moreover, a stay of discovery can be problematic because it may needlessly lengthen the litigation. *Infilaw*, 2018 WL 889024, at *4. These factors weigh against the entry of a stay." Defendants have failed to show good cause for a stay of discovery in this instance. Their motion should be denied.

---

[7] *See Cty. of El Paso, Tex. v. Jones*, 2009 WL 4730305, at *29, *30 (W.D. Tex. Dec. 4, 2009) (noting that "adjudication of the County's state-law conspiracy to commit fraud claim requires factual determinations similar to those underlying the County's federal claims; namely, whether Defendants intended to defraud the County of its property").

Dated:  January 22, 2019                                   Respectfully submitted,

*/s/ Sam Baxter*                                           */s/ W. Mark Lanier*

Samuel F. Baxter (co-lead counsel)                         Mark Lanier (co-lead counsel)
sbaxter@mckoolsmith.com                                    WML@LanierLawFirm.com
Jennifer L. Truelove                                       Christopher L. Gadoury
jtruelove@mckoolsmith.com                                  Chris.Gadoury@LanierLawFirm.com
MCKOOL SMITH P.C.                                          Jonathan P. Wilkerson
104 East Houston, Suite 300                                Jonathan.Wilkerson@LanierLawFirm.com
Marshall, Texas 75670                                      THE LANIER LAW FIRM, P.C.
(903) 923-9000                                             6810 FM 1960 West
Fax: (903) 923-9099                                        Houston, Texas 77069
                                                           (800) 723-3216
Eric B. Halper                                             Fax:  (713) 659-2204
ehalper@mckoolsmith.com
Radu A. Lelutiu
rlelutiu@mckoolsmith.com
Dana E. Vallera
dvallera@mckoolsmith.com
Karla Y. Valenzuela
kvalenzuela@mckoolsmith.com
MCKOOL SMITH P.C.
One Bryant Park, 47th Floor
New York, New York 10036
(212) 402-9400
Fax: (212) 402-9444

*ATTORNEYS FOR RELATORS*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 22, 2019 to counsel of record who are deemed to have consented to electronic services via the Court's CM/ECF system.  Any other counsel of record will be served by electronic mail, facsimile, U.S. Mail and/or overnight delivery.


*/s/  W. Mark Lanier*
W. Mark Lanier