**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **HEALTH CHOICE ALLIANCE, LLC,** <br> **on behalf of the UNITED STATES OF** <br> **AMERICA, et al.** | § <br> § <br> § <br> § | |
| *Plaintiff/Relator,* | § <br> § | |
| **v.** | § <br> § | **Case No. 5:17-CV-123-RWS-CMC** |
| **ELI LILLY AND COMPANY, INC.,** <br> *et al.,* | § <br> § <br> § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| **HEALTH CHOICE GROUP, LLC,** <br> **on behalf of the UNITED STATES OF** <br> **AMERICA, et al.** | § <br> § <br> § | |
| *Plaintiff/Relator,* | § <br> § | |
| **v.** | § <br> § | **Case No. 5:17-CV-126-RWS-CMC** |
| **BAYER CORPORATION, et al.** | § <br> § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

The above-referenced *qui tam* False Claims Act ("FCA") cases were referred to the

undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. §

636. The FCA includes a provision allowing the government to dismiss an action if the relators have

been notified and have had an opportunity for a hearing on the motion. 31 U.S.C. § 3730(c)(2)(A).

Seeking dismissal of both actions pursuant to this provision, the United States of America (the "government" or "United States") has filed the following motions:

**The United States' Motion to Dismiss Relator's Second Amended Complaint (Cause No. 5:17-cv-123, Docket Entry # 192); and**

**The United States' Motion to Dismiss Relator's Second Amended Complaint (Cause No. 5:17-cv-126, Docket Entry # 116)**.

Relators oppose dismissal on several grounds.  As required by the statute, the Court held a hearing on the motions on April 24, 2019.  Based on the representations made in the briefs and at the hearing, the Court recommends the motions to dismiss be **GRANTED**.

## I. BACKGROUND

In June of 2017, three separate affiliates of the National Healthcare Analysis Group ("NHCA Group"), an alleged research organization based in New Jersey, filed three related *qui tam* actions in this Court: (1) *U.S. ex rel. Health Choice Alliance, LLC v. Gilead Sciences, Inc., et al.* (Cause No. 5:17-cv-121) ("*Gilead* case");[1] (2) *U.S. ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co., et al.* (Cause No. 5:17-cv-123) ("*Lilly* case"); and (3) *U.S. ex rel. Health Choice Group, LLC, et al. v. Bayer Corporation, Inc., et al.* (Cause No. 5:17-cv-126) ("*Bayer* case").  NHCA Group, acting through various limited liable companies, filed twelve *qui tam* actions nationwide making

---

[1] Relator Health Choice Alliance, LLC voluntarily dismissed the *Gilead* action on July 23, 2018. The government consented to the dismissal "based on its determination that under the circumstances such a dismissal [was] commensurate with the public interest and that the matter d[id] not warrant the continued expenditure of government resources to pursue or monitor the action based on currently available information." Cause No. 5:17-cv-121, Docket Entry # 246.

substantially the same allegations asserted in the cases before the Court.[2]  *See* Declaration of John R. Mininno ("Minnino Decl."), attached to Relators' Response to Mots. to Dismiss, ¶ 10.

In the *Lilly* and *Bayer qui tam* actions brought under the FCA and various state laws, relators Health Choice Alliance LLC and Health Care Group, LLC (together, "Relators") originally brought claims against the following defendants: (1) Eli Lilly and Company, Inc. ("Lilliy"), VMS BioMarketing ("VMS"), Covance, Inc. ("Covance"), United BioSource Corporation ("UBC"), and HealthSTAR Clinical Education Solutions LLC ("Healthstar") (*Lilly* Defendants); and (2) Bayer Corporation, Amgen, Inc., Onyx Pharmaceuticals, Inc., AmerisourceBergen Corporation, and Lash Group (*Bayer* Defendants).  The general background and facts of these cases are set forth in detail in the Court's opinions on the defendants' motions to dismiss the First Amended Complaints ("FACs") in the *Lilly* and *Bayer* cases and will not be repeated here except as necessary to understand the discussion regarding the government's motions to dismiss.

---

[2] These cases are: *U.S. ex rel. SAPF, LLC, et al. v. Amgen, Inc., et al.*, No. 16-cv-5203 (E.D. Pa.); *U.S. ex. rel. v. EMD Serono, Inc., et al.*, No. 16-cv-5594 (E.D. Pa.); *U.S. ex rel. NHCA-TEV, LLC v. Teva Pharm., et al.*, No. 17-cv-2040 (E.D. Pa.); *U.S. ex rel. SMSF, LLC, et al. v. Biogen Inc., et al.*, No. 1:16-cv-11379 (D. Mass.); *U.S. ex rel. SCEF, LLC v. Astra Zeneca PLC, et al.*, No. 17-cv-1328 (W.D. Wash.); *U.S. ex rel. Miller, et al. v. AbbVie, Inc.*, No. 3:16-cv-2111 (N.D. Tex.); *U.S. ex rel. Carle, et al. v. Otsuka Holdings Co., et al.*, No. 17-cv-966 (N.D. Ill.); *U.S. ex rel. CIMZNHCA v. UCB, Inc., et al.*, No. 3:17-cv-00765 (S.D. Ill.); *U.S. ex rel. Health Choice Group, LLC. v. Bayer Corp., et al.*, No. 5:17-cv-126 (E.D. Tex.); *U.S. ex rel. Health Choice All., LLC v. Eli Lilly & Co., et al.*, No. 5:17-cv-123 (E.D. Tex.); *U.S. ex rel. Health Choice Advocates, LLC v. Gilead, et al.*, No. 5:17-cv-121 (E.D. Tex.); and *U.S. ex rel. Doe and APBQR, LLC v. Sanofi-Aventis U.S. LLC, et al.*, No. 16-5107 (S.D.N.Y.).  *See U.S. ex. rel. v. EMD Serono, Inc*., No. CV 16-5594, 2019 WL 1468934, at *1 n. 4 (E.D. Pa. Apr. 3, 2019); *see also* Mots. to Dismiss at 2-3 and accompanying Declaration of Brian J. McCabe ("McCabe Decl."), ¶¶ 2-3 and Exhibit A (email describing corporate structure of NCHA Group) and Exhibit B (visual aid depicting NCHA Group relators and corporate organization). According to the government's replies, six of the related NHCA Group actions remain pending, including the cases before the Court.

The gravamen of the complaints is the same.  Relators allege the defendant pharmaceutical companies caused the submission of false claims for reimbursement for certain medicines to government healthcare programs that were knowingly induced by unlawful remuneration. Specifically, Relators allege the pharmaceutical companies and commercial outsourcing vendors violated the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), by engaging in three alleged schemes—referred to as the free nurse services, white coat marketing, and reimbursement support services schemes.

The government declined to intervene after an investigation of the allegations. The *Lilly* and *Bayer* cases were thereafter unsealed, and Relators filed FACs, which were later dismissed without prejudice.[3] Relators filed Second Amended Complaints in both cases, adding additional factual details to support Relators' claims.[4]

---

[3] Defendants filed numerous motions to dismiss Relators' FACs in the *Lilly* and *Bayer* cases. The undersigned held a consolidated hearing on May 14, 2018. In June and July of 2018, the undersigned issued two Report and Recommendations, each over one hundred pages in length, recommending the motions to dismiss the FACs be granted in part and denied in part. (Cause No. 5:17-cv-123, Docket Entry # 163) (Cause No. 5:17-cv126, Docket Entry # 91). No objections were filed to the Reports, and the District Judge adopted both Reports as the findings and conclusions of this Court, ordering Relators to re-plead the federal and state law FCA claims. (Cause No. 5:17-cv-123, Docket Entry # 164) (Cause No. 5:17-cv126, Docket Entry # 98).

[4] In the *Lilly* case, United, Healthstar, VMS, and Lilly each filed a motion to dismiss Relator Health Choice Alliance, LLC's Second Amended Complaint. (Cause No. 5:17-cv-123, Docket Entry #s 177, 178, 180, and 183). Healthstar, VMS, and Lilly also filed motions for summary judgment. (Cause No. 5:17-cv-123, Docket Entry #s 179, 181, and 182). Thereafter, on January 9, 2019, Relator Health Choice Alliance, LLC filed a Notice of Voluntary Dismissal Without Prejudice, seeking to dismiss without prejudice its claims against Defendants UBC, Healthstar, VMS, and Covance, leaving only Relator's claims against Lilly.  (Cause No. 5:17-cv-123, Docket Entry # 201).

In the *Bayer* case, *Bayer* Defendants also filed a motion to dismiss Relator Health Choice Group, LLC's Second Amended Complaint.  (Cause No. 5:17-cv-126, Docket Entry # 108).

4

## II. THE GOVERNMENT'S MOTIONS TO DISMISS

The government now moves to dismiss all claims in the *Lilly* and *Bayer* cases brought on behalf of the United States under the FCA with prejudice as to Relators and without prejudice as to the United States pursuant to 31 U.S.C. § 3730(c)(2)(A).[5] The government asserts the Department of Justice ("DOJ"), in coordination with several investigative agencies, devoted considerable time and resources to investigating this group of cases over a lengthy period of time.  According to the government, in all cases the DOJ attorneys reached the same conclusion: that the allegations lack sufficient factual and legal support to establish a violation of the FCA. The government has also concluded that further litigation will impose burdens and costs on the government that are not justified and will undermine practices that benefit federal healthcare programs by providing patients with greater access to product education and support.  Contending it has already expended substantial resources on these matters, the government now seeks to exercise its statutory right to dismiss the *Lilly* and *Bayer* cases.

Relators argue that, to be granted, the government's motions to dismiss must make a proper showing–evidentiary or otherwise–and the government has failed to do so. According to Relators' response, the government's motions to dismiss were filed fourteen months "after the government declined intervention—without providing a substantive explanation; [ten] months after Defendants' lengthy motions to dismiss were briefed—with no participation from the government; eight months

---

[5] Relators have brought claims on behalf of certain Medicaid-participating states under their respective state false claim statutes. According to the government's motions to dismiss, counsel for the state of Texas and representative of the National Association of Medicaid Fraud Control Units has represented to the United States that all named plaintiff states consent to the United States' motions to dismiss so long as it is without prejudice as to the states, with the exception of New Jersey, which takes no position on the motions.  Mots. to Dismiss at 1, n. 1.

after Judge Craven held a day-long hearing concerning the merits of Relator's allegations—which the government declined to attend; six months after Judge Craven concluded, in a 100+ page R&R, that each theory of liability articulated by Relator stated an AKS violation that cleared the plausibility standard of Rule 12(b)(6); and four months after the District Court—having received no objection from either Defendants or the government—adopted the R&R." Response at 1.  Relators argue "the government gives no indication as to why, after playing no role whatsoever in this litigation for the past [fourteen] months, it now wishes to dismiss it." *Id.*  Relators take issue with the government's statements regarding its alleged investigation into Relators' claims, asserting there is no evidentiary support in the McCabe Declaration attached to the government's motions to support such a claim.

In its reply, the government asserts the FCA, and a substantial body of case law interpreting it, provide the United States is entitled to broad deference to decide which claims should be prosecuted on its behalf.  According to the government, whether this broad deference is viewed as giving the government "unfettered discretion" to dismiss an action (as some courts have found and the government contends), or allows the government to dismiss if it articulates a rational basis (as other courts have held and as Relators contend), none of Relators' arguments provide a basis to override the government's "reasoned determination that the litigation should not proceed and that the claims should be dismissed."  Replies at 2.

Relators contend the government has failed to demonstrate its decision to dismiss has a rational relationship to a governmental interest, which Relators contend is the proper standard for considering whether to dismiss an action on the government's motion over a relator's objection. They argue the government's decision to dismiss also reflects arbitrary and capricious conduct.  Even

6

under a more deferential standard like the one urged by the government, Relators argue the motions

to dismiss still fail because "the government has sought to mislead the Court by misrepresenting the

nature and scope of its supposed 'investigation' into Relators' [sic] allegations."  Surreply at 6.

### III.  APPLICABLE LAW

#### A.    The FCA

"The False Claims Act . . . imposes liability on any person who knowingly presents . . . a

false or fraudulent claim for payment or approval, to an officer or employee of the United States."

*Kellogg Brown & Root Servs., Inc. v. United States, ex rel. Carter*, 135 S. Ct. 1970, 1973 (2015)

(internal quotations and citations omitted).  The Court has discussed the procedure and the historical

underpinnings of the *qui tam* provisions of the FCA in prior opinions, and it need not repeat them

here. "Suffice it to say that in certain circumstances, suits by private parties on behalf of the United

States against anyone submitting a false claim to the government are permitted." *United States ex*

*rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 351 (5th Cir. 2003), *abrogated*

*by Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007)

(citing *Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 941, 117 S.Ct. 1871, 138

L.Ed.2d 135 (1997)).

The FCA permits "a person" acting on his own behalf and "for the United States

Government"—i.e., the relator—to remedy certain frauds. 31 U.S.C. § 3730(b)(1). The individual

brings his claim "in the name of the Government." *Id.* Once the relator files suit, the Government

must investigate the matter and determine whether it will intervene and take "primary responsibility

for prosecuting the action," or so decline. *United States ex rel. Vaughn v. United Biologics, L.L.C.*,

907 F.3d 187, 192 (5th Cir. 2018) (quoting 31 U.S.C. § 3730(b)(4); 3730(c)(1)). If the Government

declines to intervene, then "the person who initiated the action shall have the right to conduct the action." *Vaughn*, 907 F.3d at 192 (quoting § 31 U.S.C. 3730(c)(3)). In this capacity, the relator stands in the place of the Government, representing its interests. *Vaughn*, 907 F.3d at 192-93 (citation omitted).

Even when the Government declines to intervene, it remains a distinct entity in the *qui tam* litigation with protected interests. *Vaughn*, 907 F.3d at193. "This fact is established by the FCA itself, which affords the Government certain rights in the litigation regardless of its decision not to intervene." *Id.* For example, it is to be supplied with "all pleadings filed in the action" and "copies of all deposition transcripts." *Id*. (quoting 31 U.S.C. § 3730(c)(3))*.* Moreover, the Government may stay discovery if it can show that the litigation is obstructing a separate investigation or prosecution. *Vaughn*, 907 F.3d at193 (citing 31 U.S.C. § 3730(c)(4)). The Government still receives at least 70% of the remedy award. *Vaughn*, 907 F.3d at193 (citing 31 U.S.C. § 3730(d)(2)). The Government may settle the action with the defendant notwithstanding the objection of the relator if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. 31 U.S.C. § 3730(c)(2)(B). And the Government must still give its consent before the relator dismisses the action. *Vaughn*, 907 F.3d at193 (citing 31 U.S.C. § 3730(b)(1)).

**B.      Dismissal under § 3730(c)(2)(A)**

Most importantly for purposes here, the FCA provides the Government may dismiss a *qui tam* action "notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). Courts agree it is

8

unnecessary for the government to intervene formally in the action before moving to dismiss under

§ 3730(c)(2)(A). *U.S. ex rel. May v. City of Dallas*, No. 3:13-cv-4194-N-BN, 2014 WL 5454819,

at *2 (N.D. Tex. Oct. 27, 2014) (unreported) (citing *Ridenour v. Kaiser-Hill Co., L.L.C.,* 397 F.3d

925, 932 (10th Cir. 2005)); *see also U.S. ex rel. Sibley v. Delta Regional Medical Center*, No. 4:17-

cv-000053-GHD-RP, 2019 WL 1305069, at *3 (N.D. Miss. March 21, 2019) (citing *U.S. v.

Everglades Coll, Inc*., 855 F.3d 1279, 1286 (11th Cir. 2017) (citing *Ridenour*, 397 F.3d at 933)).

However, courts are split on whether the statute permits the government to unilaterally dismiss *qui

tam* actions brought under the FCA without reason, or whether the United States must show that

dismissal serves a valid government purpose.  *Sibley*, 2019 WL 1305069, at *3.

## C.      Dismissal as of right or if it serves a valid government purpose

### 1.      Different standards for dismissal under § 3730(c)(2)(A)

Section 3730(c)(2)(A) does not create a particular standard for dismissal and, as noted above,

courts disagree on the standard for dismissing an action on the government's motion over a relator's

objection. As noted above, although "the circuit courts agree that dismissal is not contingent on

intervention, they disagree on the standard of review for dismissal: whether dismissal under §

3730(c)(2)(A) is conditioned on any standard at all, and if so, what that standard is." *U. S. ex rel.

Davis v. Hennepin Cty.*, No. 18-CV-01551 (ECT/HB), 2019 WL 608848, at *4 (D. Minn. Feb. 13,

2019).

### 2.      Circuit court cases

In 1998, the Ninth Circuit Court of Appeals first considered the issue. *See U.S. ex rel.,

Sequoia Orange Co. v. Baird-Neece Packing Corp*., 151 F.3d 1139 (9th Cir. 1998). In *Sequoia

9

*Orange*, an orange processor filed a *qui tam* action against other citrus companies alleging violations of the orange and lemon marketing orders promulgated by the Secretary of Agriculture. *Id.* at 1141. The government intervened several years into the litigation and sought dismissal under § 3730(c)(2)(A) because it had decided to abandon the entire marketing program. *Id.* The district court granted the government's motion to dismiss, finding the decision was rationally related to a legitimate governmental purpose. *Id.* (citing *U.S. ex rel. Sequoia Orange Co. v. Sunland Packing House Co.*, 912 F.Supp. 1325 (E.D. Cal. 1995)).

On appeal, the Ninth Circuit first noted the statute is silent regarding the circumstances under which the government may dismiss a *qui tam* action. *Sequoia Orange*, 151 F.3d at 1143. It further noted "the decision to dismiss has been likened to a matter within the government's prosecutorial discretion in enforcing federal laws." *Id.* (citations omitted). The relators argued that interpreting § 3730(c)(2)(A) to give the government authority to dismiss a meritorious *qui tam* action was inconsistent with the general framework of the False Claims Amendments Act of 1986, which the relators argued was intended to provide relators with "increased involvement in suits brought by the relator but litigated by the Government." *Id.* at 1143-44. According to the Ninth Circuit, although the amendments increased the relator's role in a case in which the government intervened, the government still has "primary responsibility" for the case and "now enjoys supervisory powers over the relator." *Id.* at 1144. The Ninth Circuit further noted the amendments also expanded the government's ability to intervene. Thus, the False Claims Amendments Act of 1986 "actually increased rather than decreased, executive control over qui tam litigation." *Id.*

Noting the government's power to dismiss or settle an action is "broad," the Ninth Circuit further noted the legislative history of the 1986 amendments support "the district court's conclusion

that a meritorious suit may be dismissed upon a proper showing." *Id.* The Ninth Circuit gave weight to a Senate Report which explained the amendments "provide[d] qui tam plaintiffs with a more direct role . . . in acting as a check that the Government does not neglect evidence, cause undue delay, or drop the false claims case without legitimate reason." *Id.* (quoting S. Rep. No. 99-345, at 25–26 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5291). According to the Ninth Circuit, this statement "reflects congressional intent that the qui tam statute create only a limited check on prosecutorial discretion to ensure suits are not dropped without legitimate governmental purpose." *Sequoia Orange*, 151 F.3d at 1144–45.

The Ninth Circuit held the district court "acted reasonably" in adopting the following standard:

> A two step analysis applies here to test the justification for dismissal: (1) identification of a valid government purpose; and (2) a rational relation between dismissal and accomplishment of the purpose.

*Id.* at 1145 (quoting 912 F.Supp. at 1341). Under this rational relation standard, if the government satisfies the two-step test, the burden switches to the relator "to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Sequoia Orange*, 151 F.3d at 1145.

The Ninth Circuit stated the rational relation standard "draws significant support from the Senate Report" to the amendments, which "explained that the relators may object if the government moves to dismiss without reason." *Id.* (citing S. Rep. No. 99-345, at 26 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5291). Finally, the Ninth Circuit dismissed any separation of powers concerns by holding that the standard applied was no greater than "mandated by the Constitution itself." *Sibley*, 2019 WL 1305069, at *4 (citing *Sequoia Orange*, 151 F.3d at 1146). Thus, the standard did

not impermissibly require judicial approval over executive authority. *Sibley*, 2019 WL 1305069, at

*4 (citing *Sequoia Orange*, 151 F.3d at 1145-1146). The Ninth Circuit concluded the government

met its burden of showing the dismissal was rationally related to a legitimate government interest.

*Sequoia Orange*, 151 F.3d at 1146.

Next, in 2003 the D.C. Circuit Court of Appeals considered whether a lower court was

correct in applying the *Sequoia Orange* rational relation standard. *See Swift v. United States*, 318

F.3d 250 (D.C. Cir. 2003). In *Swift*, the appellate court declined to adopt the rational relation test,

instead reading § 3730(c)(2)(A) as giving the government "an unfettered right to dismiss" a *qui tam*

action. *Id.* at 252. The D.C. Circuit started with the statute's text, noting § 3730(c)(2)(A) appears

to give the executive the power to dismiss unilaterally: "The section states that 'The

Government'—meaning the Executive Branch, not the Judicial—'may dismiss the action,' which

at least suggests the absence of judicial constraint." *Id.* The court also equated a motion to dismiss

in this context with a decision not to prosecute, which was "a decision generally committed to [the

government's] absolute discretion." *Id.* (citing *Heckler v. Chaney*, 470 U.S. 821, 831-33, 105 S. Ct.

1649, 1655–57, 84 L.Ed.2d 714 (1985); *Newman v. United States*, 382 F.2d 479, 480 (D.C.Cir.

1967)).

The D.C. Circuit stated "[n]othing in § 3730(c)(2)(A) purports to deprive the Executive

Branch of its historical prerogative to decide which cases should go forward in the name of the

United States." *Swift*, 318 F.3d at 253. According to the D.C. Circuit, the relator's right to a

hearing, as set forth in § 3730(c)(2)(A), "is all that points to a role for the courts in deciding whether

the case must go forward despite the government's decision to end it." *Id.* The D.C. Circuit

concluded "the function of a hearing when the relator requests one is simply to give the relator a formal opportunity to convince the government not to end the case." *Id.*

The D.C. Circuit discounted the Senate Report cited by the Ninth Circuit, noting the report related to an "unenacted Senate version of the 1986 amendment." *Id.* Finally, the D.C. Circuit stated even if the rational relation *Sequoia Orange* test set the proper standard, the government would easily have satisfied it. *Id.* at 254.  The D.C. Circuit noted the "asserted governmental interests were that the dollar recovery was not large enough to warrant expending resources monitoring the case, complying with discovery requests, and so forth, and that spending time and effort on [the] case would divert scarce resources from more significant cases." *Id.* According to the court, Swift failed to establish the government's prosecutorial judgment was arbitrary and capricious, illegal, or fraudulent. *Id.*

The defendants in *Swift* had not yet been served with the complaint, *id.* at 251, but the D.C. Circuit subsequently applied *Swift's* interpretation of § 3730(c)(2)(A) in a case where the defendant had been served. *See Hoyte v. Am. Nat'l Red Cross,* 518 F.3d 61, 65 (D.C.Cir.2008). Both *Swift* and *Hoyte* mentioned "fraud on the court" as a possible exception to the unfettered deference provided to the government to dismiss *qui tam* suits. *U. S. ex rel. Schneider v. J.P. Morgan Chase Bank, N.A.*, No. CV 14-1047 (RMC), 2019 WL 1060876, at *2 (D.D.C. Mar. 6, 2019) (citing *Swift*, 318 F.3d at 253; *Hoyte*, 518 F.3d at 65) (noting, as in *Swift* and *Hoyte*, there was no evidence to suggest any fraud or any other "exceptional circumstance to warrant departure from the usual deference we owe the Government's determination whether an action should proceed in the Government's name"); *see also U.S. ex rel. Levine v. Avnet, Inc.*, No. 2:14-CV-17 WOB-CJS, 2015 WL 1499519, at *4 (E.D. Ky. Apr. 1, 2015) ("In *Hoyte,* the D.C. Circuit also clarified that the government has 'virtually'

13

unfettered discretion to dismiss, leaving open the possibility that a court might depart from the 'usual deference' owed to the Government's determination whether an action should proceed in its name in 'exceptional circumstances,' such as a showing of fraud on the court.").[6]

The only other circuit to weigh in on the controversy, the Tenth Circuit Court of Appeals, has sided with the Ninth Circuit. *See Nasuti ex rel. U.S. v. Savage Farms, Inc*., No. CIV.A. 12-30121-GAO, 2014 WL 1327015, at *10 (D. Mass. Mar. 27, 2014), *aff'd sub nom. Nasuti v. Savage Farms Inc.*, No. 14-1362, 2015 WL 9598315 (1st Cir. Mar. 12, 2015)[7] (citing *Ridenour,* 397 F.3d at 936). In *Ridenour,* the Tenth Circuit considered what standard applies when the government moves to dismiss a *qui tam* action under § 3730(c)(2)(A) after the defendant has been served. The Tenth Circuit adopted the *Sequoia Orange* test, which requires the government to identify a valid governmental purpose that is rationally related to dismissing the action. *Id.* at 936 (quoting *Sequoia Orange,* 151 F.3d at 1145). If the government satisfies this test, the burden shifts to the relator to show that

---

[6] The district court in *Levine* noted the Sixth Circuit Court of Appeals had not addressed the appropriate standard and agreed with the D.C. Circuit's conclusions in *Swift* and *Hoyte* that the government has a "virtually unfettered right" to dismiss the case. 2015 WL 1499519, at *1, *4. Even if the stricter *Sequoia Orange* standard were to apply, the court concluded the government would have made the required showing. *Id*. at *5.

[7] The magistrate judge in *Nasuti* was persuaded the *Sequoia Orange* standard adopted by the Ninth and Tenth Circuits was the "better of the two," but noted the standard should not be "particularly arduous." 2014 WL 1327015, at *10 (further noting the government, as the real party in interest, should have "broad discretion to determine its fate"). The magistrate judge concluded the government satisfied its burden for dismissal. *Id.* at *11; *see also id.* at *12 (noting the government need not produce evidence in support of its reasons for seeking dismissal, only that it provide "plausible, or arguable reasons supporting" its decision).

In the order adopting the report and recommendation of the magistrate judge, the district judge noted that, unlike the magistrate judge, he found the *Swift* rationale more persuasive. *Id.* at *1. The "minor doctrinal difference" was of "no moment" because the district judge agreed with the magistrate judge that the government's motion to dismiss should be granted whether one relies on the explanation given in *Swift* or in *Sequoia Orange*. *Id.*

dismissal is "fraudulent, arbitrary and capricious, or illegal." *Id.* (internal quotation marks omitted). The Tenth Circuit pointed out that to establish a rational relation to a valid governmental purpose under the test as applied by the district court in *Sequoia Orange*, "there need not be a tight fitting relationship between the two; it is enough that there are plausible, or arguable, reasons supporting the agency decision." *Id.* at 937 (alteration, internal quotation marks, and citation omitted). The court in *Ridenour* held the government met the test by advancing a "plausible, or arguable" reason for the dismissal.  *Id.*

In *Ridenour*, the Tenth Circuit expressly declined to decide "whether § 3730(c)(2)(A) gives the judiciary the right to pass judgment on the Government's decision to dismiss an action where the defendant has not been served and where the Government did not intervene in the action, facts of the sort presented in *Swift*." *Id.* at 936 n. 17. As a result, it remained an open question in the Tenth Circuit whether *Swift* or *Sequoia Orange* provided the proper scope of judicial review in such cases. When faced with the issue in *U.S. ex rel. Wickliffe v. EMC Corp.*, 473 Fed. Appx. 849, 853 (10th Cir. 2012), the Tenth Circuit did not need to resolve the question "because even under the greater judicial scrutiny imposed by the *Sequoia* standard, the government's motion to dismiss passe[d] muster. . . ." The Tenth Circuit stated the government had provided a rational reason for dismissing the action, and the relators failed to establish dismissal was arbitrary and capricious. *Id*. at 853-54 (further noting "the potential merit of a qui tam action is insufficient to overcome the government's rational reasons for dismissing the suit").

The Fifth Circuit has not "squarely confronted this same question, but it, too, has observed that the government has the 'power to take the . . . radical step of unilaterally dismissing the defendant.'"  *Davis*, 2019 WL 608848, at *5 (quoting *Searcy v. Philips Elecs. N. Am. Corp.*, 117

F.3d 154, 160 (5th Cir. 1997) (citations omitted); *see also U. S. ex rel. CIMZNHCA, LLC v. UCB, INC.*, No. 17-CV-765-SMY-MAB, 2019 WL 1598109, at *2 (S.D. Ill. Apr. 15, 2019) (citing *Riley v. St. Luke's Episcopal Hospital*, 252 F.3d 749 (5th Cir. 2001) (en banc) and stating the Fifth Circuit is in accord with the D.C. Circuit).

### 3.    District court cases

In 2005, this Court noted the Fifth Circuit had not addressed "fully the standard for dismissal of a qui tam action under section 3730(c)(2)(A)."  The Court further noted the Ninth Circuit and D.C. Circuit had considered the issue.  *U. S. ex rel. Wright v. AGIP Petroleum Co.*, No. 5:03-CV-264-DF, 2005 WL 8167952, at *2 (E.D. Tex. Feb. 3, 2005) (granting the government's motion to dismiss filed more than eight years after the *qui tam* action was filed and more than four years after declination-in-part). The Court did not need to reach the issue of whether the government has an "unfettered right" to dismiss because under the greater judicial scrutiny imposed by the *Sequoia Orange* standard the government provided rational reasons for dismissal of Wright's case.  *Id.*

However, in considering whether the government needed to intervene formally in the action to dismiss Wright's claims, the Court quoted from *Riley*, a 2001 Fifth Circuit case which opined on the extent of the Executive Branch's control over *qui tam* actions:

> Our precedent, moreover, accords with the position that this en banc court now takes. In *Searcy v. Philips Electronics N. Am. Corp., et al.*, 117 F.3d 154 (5th Cir. 1997), we held that the FCA clearly permits the government to **veto settlements** by a qui tam plaintiff **even when it remains passive in the litigation**. We cited several ways in which the government may assume control over qui tam litigation in which it **does not intervene** under the FCA. *See id.*, 117 F.3d at 160. We noted that not only may the government take over a case within 60 days of notification, but it may also intervene at a date beyond the 60-day period upon a showing of good cause. *Id.*, 117 F.3d at 159 (citing 31 U.S.C. § 3730(d)(2)(A) and 31 U.S.C. §§ 3730(b)(3) & (c)(3)). This Court also stated that the government retains the **unilateral power to dismiss**

>**an action 'notwithstanding the objections of the person.'** *Id.*, 117 F.3d at 160
>(citing 31 U.S.C. § 3730(c)(2)(A)).

*Wright*, 2005 WL 8167952, at *3 (quoting *Riley*, 252 F.3d at 753) (emphasis added in *Wright*).

The Court concluded the government did not need to intervene formally to move to dismiss. *Id.* at *4.  The Court further concluded the government provided a valid government purpose and a rational relation between dismissal and accomplishment of that purpose. *Id.* at *7.  Because Wright did not demonstrate the government's rational relation was fraudulent, arbitrary and capricious, or illegal, the Court granted the government's motion to dismiss.  *Id.* at *7-*8.

Almost fifteen years later, the Fifth Circuit has still not specifically addressed whether the government has an "unfettered right" to dismiss the case.  However, in the last few months, a handful of district courts have addressed what standard the Court should use to determine whether the government's motion to dismiss ought to be granted. The Court specifically addresses three cases which the parties submitted in their Notices of Supplemental Authority.

In *Sibley*, the only case from within the Fifth Circuit, Senior District Judge Davidson concluded both the text of the FCA and the case law establish the government possesses the unfettered discretion to dismiss a *qui tam* action. 2019 WL 1305069, at *1, *5. In reaching this conclusion, the court stated "the Fifth Circuit has all but explicitly stated that the government's decision to dismiss a *qui tam* false claim case is its choice alone."  *Id.* at *5.

The two other recent cases (one from within the Third Circuit and one from within the Seventh Circuit) involved the government's motions to dismiss *qui tam* actions filed by limited liability companies established by NHCA Group with substantially the same allegations as in the

cases before the Court. Both courts applied the *Sequoia Orange* standard, but only one granted the government's motion to dismiss.

Before granting the government's motion to dismiss, a district court in Pennsylvania found the reasoning of the Ninth and Tenth Circuits more persuasive than that of the District of Columbia Circuit. *U. S. ex rel. SMSPF, LLC, et al. v. EMD Serono, Inc., et al.*, No. 16-5594, 2019 WL 1468934, *3 (E.D. Pa. April 3, 2019). The *Serono* court stated the rational relation standard accords with statutory interpretation, fosters transparency, and is consistent with the "constitutional scheme of checks and balances." *Id*. According to the relator in *Serono*, if the government's right to dismiss is "unfettered," as the *Swift* court held, "a hearing would be superfluous, rendering the requirement of a hearing a nullity." *Id.* The *Serono* court agreed, reasoning as follows:

> If the purpose of the hearing, as the District of Columbia Circuit read into the statute, is only to afford the relator an opportunity to convince the government to change its mind, what role does the judge play? Is the judge an observer, a mediator, or a participant in the debate? Certainly, if the government's right to dismiss is limitless, the judge is not an adjudicator. The judge has no decision to make if the government's right to dismiss is unchallengeable.

> Requiring a hearing assures that the decision to dismiss is not arbitrary and without a valid governmental interest. The False Claims Act was created by Congress to enhance the government's ability to recover losses sustained as a result of fraud against the government. S. Rep. No. 99-345, at 1 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5291.

> The Legislative Branch has delegated to the Executive Branch the authority to pursue these actions with the relator. Requiring some justification, no matter how insubstantial, for a decision not to pursue a false claim, acts as a check against the Executive from absolving a fraudster on a whim or for some illegitimate reason. It prevents the Executive from abusing power.

> The rational relationship test strikes a balance among the branches of government. It does not give unlimited power to the Executive to dismiss a legitimate action the Legislature created. Nor does it give the Judicial Branch unrestrained power to stop the Executive from acting to dismiss an action in the government's interest.

> Requiring the Executive to give a reason for a decision to dismiss a *qui tam* action the Legislature intended to be pursued is consistent with the notion of independent, co-equal branches of government.[8]

*Id.* at *4.

Applying the *Sequoia Orange* rational relation test, the court in *Serono* held the government had articulated a legitimate interest and dismissal would accomplish that interest. *Id.* Specifically, the government asserted (1) it had a valid interest in avoiding litigation costs in a case that lacked sufficient factual and legal support; (2) after extensive investigation, the case was unlikely to yield a recovery justifying the costs and burdens it would incur if the case proceeds; (3) after having already expended substantial time and resources, the government concluded it was better to use its resources pursuing other claims; and (4) the relators' allegations "conflict[ed] with important policy and enforcement prerogatives of the federal government's healthcare programs." *Id.*

---

[8] At the April 24 hearing, Relators' counsel similarly argued the *Swift* court's reasoning is "corrosive of judicial power." Tr. at 23:1-2.  According to counsel, the hearing should, in fact, be an authentic and meaningful one.  *Id.* at 23:2-7; *see also U. S. ex rel. CIMZNHCA, LLC v. UCB, INC.*, No. 17-CV-765-SMY-MAB, 2019 WL 1598109, at *3 (S.D. Ill. Apr. 15, 2019) (stating the "*Swift* standard renders the hearing specifically provided for in the statute superfluous and belies the role of the judiciary in ensuring constitutional checks and balances"). The Court has carefully considered this argument but ultimately finds it unpersuasive.

Counsel for the government correctly pointed out at the hearing that other courts have concluded the hearing requirement is not rendered superfluous by the *Swift* interpretation for a couple of reasons, including the fact the hearing is a public proceeding. Tr. at 10:7-23.  Along those lines, the court in *U. S. ex rel. Davis v. Hennepin Cty.*, No. 18-CV-01551 (ECT/HB), 2019 WL 608848 (D. Minn. Feb. 13, 2019) recently stated as follows:

> It is also notable that this motion-to-dismiss hearing was a public hearing, exposing the Executive [B]ranch to public scrutiny. Although some courts have characterized such a hearing as affording the relator one final chance to 'convince the government not to end the case' or to persuade the court that dismissal is improper, *See Swift*, 318 F.3d at 253, the hearing serves another purpose: to give the relator *and the public* an opportunity to put, and to observe, the Government's prosecutorial discretion in the spotlight and make a public record of the Government's desire to dismiss the action.

*Id.* at *6, n. 3 (emphasis in original).

Having satisfied the rational relation test, the burden shifted to the relators to demonstrate the dismissal was "fraudulent, arbitrary and capricious, or illegal." *Id*. at *5 (citing *Sequoia Orange*, 151 F.3d at 1145). The relators did not contend the government engaged in fraud or illegal action to dismiss the *qui tam* action for improper reasons.  Instead, they argued the government's proffered reasons were arbitrary and unsubstantiated.  *Id*. The court held the relators failed to present a "colorable claim that dismissal would be unreasonable, arbitrary, or an abuse of discretion."  *Id*. at *6.   Therefore, the court granted the government's motion and dismissed the action.  *Id*.

In the only case reviewed by the Court denying the government's motion to dismiss under § 3730(c)(2)(A), the district court in Illinois quoted *Serono* and also found the reasoning of the Ninth and Tenth Circuits persuasive. *U. S. ex rel. CIMZNHCA, LLC v. UCB, INC.*, No. 17-CV-765-SMY-MAB, 2019 WL 1598109, at *2–3 (S.D. Ill. Apr. 15, 2019).  Similar to the court in *Serono*, the court in *UCB* rejected *Swift* and found the *Sequoia Orange* standard consistent with statutory construction and appropriately deferential to the government's prosecutorial authority.[9] *Id*. at *2. However, unlike the *Serono* court, the court in *UCB* found the government's motion to dismiss was arbitrary and capricious, and as such, was not rationally related to a valid governmental purpose. *Id.* at *4.

The court found the government's decision to dismiss was arbitrary because the government collectively investigated the eleven *qui tam* cases filed by the relator and did not fully investigate the allegations against the specific defendants in the case before the court.  *Id*. at *3.  The court held the government's investigation, which did not include a cost-benefit analysis, fell "short of a minimally

---

[9] According to the court in *UCB*, the *Swift* standard renders the hearing specifically provided for in the statute superfluous and belies the role of the judiciary in ensuring constitutional checks and balances. 2019 WL 1598109, at *3.  The court agreed with the Ninth Circuit's reasoning in *Sequoia Orange* and held courts should conduct a limited judicial review to ensure the government's decision to dismiss is not fraudulent, arbitrary, or an abuse of power. *Id*.

adequate investigation to support the claimed governmental purpose." *Id.* The court also found "no rational relationship between the government's expressed policy interest in the enforcement prerogatives of its healthcare programs and the dismissal of [the] case," noting the government devoted a significant portion of its briefing "to deriding the relator's business model and litigation activities." *Id.* at *4. According to the court, "[u]nder the circumstances, one could reasonably conclude that the proffered reasons for the decision to dismiss are pretextual and the Government's true motivation is animus towards the relator." *Id.*

## IV. DISCUSSION

A.    **Right to dismiss by the government conveyed by statute**

"Against this backdrop of *Swift* and *Sequoia Orange*, it is appropriate to return to the language of the statute itself." *Davis*, 2019 WL 608848, at *5. When dealing with matters of statutory interpretation, "[it] is well established that [the court] commence[s] . . . with the statute's plain language. Where the language is plain, [the court] need inquire no further." *Id.* (quoting *United States v. Cacioppo*, 460 F.3d 1012, 1016 (8th Cir. 2006) (citations omitted)); *see also Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 286 (5th Cir. 2012).

The dismissal provision in the FCA provides "[t]he Government may dismiss the action notwithstanding the objections of the person initiating the action if the [relator] has been notified by the Government of the filing of the motion and the court has provided the [relator] with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). "The statute's plain language does not constrain the Government's right to dismissal on any other standard or showing." *Davis*, 2019 WL 608848, at *5 (holding, as the *Swift* court held, it is an "unfettered" right).

21

In granting the government's motion to dismiss a relator's *qui tam* action, a district court in the Northern District of Texas also started with the statute and concluded dismissal was required based on the discretion conferred by § 3730(c)(2)(A). *U.S. ex rel. May v. City of Dallas*, No. 3:13-CV-4194-N-BN, 2014 WL 5454819, at *3 (N.D. Tex. Oct. 27, 2014) (noting the Fifth Circuit in *Riley* indicated the United States retains a unilateral authority to seek dismissal in declined *qui tam* actions "notwithstanding the objections of the person"). The *May* court reasoned as follows:

> The *Swift* court makes a compelling case that the United States should not be compelled to permit a relator to sue on its behalf and that the statutory language does not require—or even permit—judicial review of this discretionary decision.

*Id.* (further holding that even if the court were to apply the Ninth Circuit's "rational relation" standard, the United States had identified a valid governmental purpose that was rationally related to dismissing the action and the relator had failed to show that dismissal was "fraudulent, arbitrary and capricious, or illegal.").

Similarly, in *Sibley*, the court found the text of § 3730 supports its holding that § 3730(c)(2)(A) gives the government unfettered discretion to dismiss a False Claims Act action brought by a relator in its name. 2019 WL 1305069, at *6. The court stated the first part of § 3730(c)(2)(A) states the "Government may dismiss the action with the defendant notwithstanding the objections" of the relator, putting "the prerogative of dismissal with the executive." *Id.* (citation omitted). According to the court in *Sibley*, when the statute gives authority to the government, especially about decisions on how to manage the action, it consistently provides that "the Government may. . . ." *Id.* "Further, in numerous instances, the statute explicitly states when a showing by the government or a finding by the court is required." *Id.* The *Sibley* court provided the following example:

> Section 3730(b)(1), the provision that allows actions by private individuals, states that if a relator wishes to dismiss the action voluntarily, '[t]he action may be dismissed only if the court and the Attorney General give written consent to the dismissal and *their reasons for consenting.*' § 3730(b)(1); *Searcy* 117 F.3d at 158.

*Id.* (emphasis added in *Sibley*). According to the *Sibley* court, "when the statute requires that the government show something, the statute explicitly says so, and when the government is not required, it does not."[10]  *Id.*

Most convincing to the *Sibley* court was § 3730(c)(2)(B), the subsection concerned with the settlement of the action rather than dismissal. *Id*. at *7.  Although both subsections 3730(c)(2)(A) and 3730(c)(2)(B) provide the government may dismiss or settle the action "notwithstanding the objections" of the relator, "§ 3730(c)(2)(B) goes on to say that the government may only settle 'if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances.'" *Id*. (quoting 31 U.S.C. § 3730(c)(2)(B)).  "Section 3730(c)(2)(A),

---

[10] The Court notes the Fifth Circuit has not even imposed on the government a "high requirement on the justifying articulation" even under § 3730(b)(1), which provides an action may be dismissed only if the court and the Attorney General give their reasons for consenting.  In *U. S. ex rel. Vaughn v. United Biologics, L.L.C.*, 907 F.3d 187 (5th Cir. 2018), the Fifth Circuit rejected a defendant's argument that it was entitled to a written or more thorough explanation for the government's or the district court's reasons for consenting to the relators' motion to dismiss a *qui tam* case. *Id.* at 196.  In so holding, the court noted the Fifth Circuit, "as well as other circuits, has concluded that the Government retains *absolute* discretion to consent (or withhold consent) to a dismissal under § 3730(b)(1)—even when it does not intervene in the litigation." *Id*. (emphasis in original) (citing *Searcy*, 117 F.3d at 158, 160; *see also United States ex rel. Michaels v. Agape Senior Comm., Inc.*, 848 F.3d 330, 339 (4th Cir. 2017) ("[Section] 3730(b)(1) does not overtly require the Government to satisfy any standard or make any showing reviewable by the court."); *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 336, 340 (6th Cir. 2000)). In light of that authority, the Fifth Circuit in *Vaughn* declined to impose a "high requirement on the justifying articulation – either for the Government itself or the district court's review of that decision." *Vaughn*, 907 F.3d at 196.  According to the court, even if it were to require some "baseline explanation requirement" (even though such a requirement was unsupported by the text of § 3730(b)(1) and contrary to its purpose), there was enough in the record in *Vaughn* to discern an adequate basis for the government's consent to the relators' dismissal to meet such a requirement. *Id.*

however, gives no standard; it requires only that the 'the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.'" *Sibley*, 2019 WL 1305069, at *7.  Because § 3730(c)(2)(B) contains explicit statements requiring the court to make determinations about the settlement and § 3730(c)(2)(A) does not, the *Sibley* court held "§ 3730(c)(2)(A) demands no finding."  *Id.*

Finding § 3730(c)(2)(A) gives the government unfettered discretion to dismiss a False Claims Act action brought by a relator in its name, the *Sibley* court stated it must grant the government's motion. *Id.*; *see also id.* at *8 (noting the *Sequoia Orange* standard is not "particularly arduous" and stating the government would still meet its burden to justify dismissal even if § 3730(c)(2)(A) does not permit the government wholly unfettered discretion to dismiss *qui tam* actions) (citations omitted).

Similarly here, the Court is of the opinion the text of the FCA establishes the government's decision to dismiss an FCA case is one committed to its discretion.  *See Sibley*, 2019 WL 1305069, at *1, *7. The Court next considers whether case law supports this finding.

**B.     Relevant case law indicates the Fifth Circuit would find similar to the D.C. Circuit's conclusions in *Swift* and *Hoyte***

As noted above, the Fifth Circuit has not articulated what level of scrutiny a district court should apply when the government moves to dismiss a *qui tam* action under § 3730(c)(2)(A).  The government argues the Fifth Circuit would adopt the D.C. Circuit's reasoning in *Swift*.  Relators argue the Court should use the Ninth Circuit's *Sequoia Orange* standard.

For the reasons set forth by the court in *Sibley*, the Court agrees the case law also establishes that the government possesses virtually "unfettered discretion" to dismiss a *qui tam* False Claims Act

action.[11] 2019 WL1305069, at *5. <u>First</u>, as discussed in detail in *Sibley*, prior Fifth Circuit precedent "strongly supports a reading of § 3730(c)(2)(A) that gives the government this power." *Id.* In *Searcy v. Philips Electronics N. Am. Corp.*, 117 F.3d 154 (5th Cir. 1997), the Fifth Circuit considered "whether the False Claims Act gives the government the power to veto a settlement after it has declined to intervene in both the trial and appellate courts." *Id.* at 155. The Fifth Circuit found the last sentence of § 3730(b)(1) to be unambiguous: "The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." *Sibley*, 2019 WL1305069, at *5 (quoting *Searcy*, 117 F.3d at 159 (quoting statute)). "Thus, the court held, the government could stop any settlement between a relator and the defendant." *Sibley*, 2019 WL1305069, at *5.

In the *Searcy* decision, the Fifth Circuit examined other provisions of the statute that gave the government great power over the action, even when the relator "conducted" the action because the government declined to intervene. *Sibley*, 2019 WL1305069, at *5. Of particular importance, the Fifth Circuit noted "the government retains the power to take the more radical step of unilaterally

---

[11] In *Hoyte,* the D.C. Circuit clarified that the government has "virtually" unfettered discretion to dismiss, leaving open the possibility that a court might depart from the "usual deference" owed to the government's determination whether an action should proceed in its name in "exceptional circumstances," such as a showing of fraud on the court. *U.S. ex rel. Levine v. Avnet, Inc.*, No. 2:14-CV-17 WOB-CJS, 2015 WL 1499519, at *4 (E.D. Ky. Apr. 1, 2015) (citing *Hoyte*, 518 F.3d at 65). As explained in *Levine*, the plain language of the statute says nothing about the government being required to make any sort of showing in support of its motion to dismiss. 2015 WL 1499519, at *4. The court in *Levine* noted the relator had not argued there had been fraud on the court or any other "exceptional circumstance" warranting stricter review of the government's decision to dismiss. *Id.*

Citing the Fifth Circuit's opinion in *Riley*, the court in *Levine* further stated it was "reluctant to impute to § 3730(c)(2)(A) a more stringent standard of review because doing so could set the provision on questionable constitutional footing." *Id.* (citing *Riley,* 252 F.3d at 753 (finding essential the government's "*unilateral* power to dismiss an action" (emphasis added in *Levine*))).

dismissing the defendant." *Id.* (quoting *Searcy*, 117 F.3d at 160 (citing 31 U.S.C. § 3730(c)(2)(A)). The Fifth Circuit reasoned that if § 3730(c)(2)(A) gives the government absolute authority to dismiss the action, then granting the government authority to veto any settlements "[did] not conflict with the relator's statutory right to control the litigation when the government chooses to remain passive." *Sibley*, 2019 WL1305069, at *5 (quoting *Searcy*, 117 F.3d at 160).

In *Riley v. St. Luke's Episcopal Hosp.*, 262 F.3d 749 (5th Cir. 2001), the Fifth Circuit, sitting *en banc*, considered whether the FCA's provision permitting the relator to conduct the litigation after the government declined intervention unconstitutionally interfered with the executive's power to conduct litigation on behalf of the United States. *Sibley*, 2019 WL1305069, at *5. "Holding it did not, the court again noted the myriad of ways the government retains control over *qui tam* litigation, even when it did not intervene. . . ." *Id.* (citing *Riley*, 262 F.3d at 744—745 (internal quotations and citations omitted)). The Fifth Circuit again highlighted the "unilateral power to dismiss an action notwithstanding the objections of the person."[12] *Sibley*, 2019 WL1305069, at *5 (citing *Riley*, 262 F.3d at 744) (citing *Searcy*, 117 F.3d at 160).

Second, giving the government the unilateral power to dismiss *qui tam* actions is consistent with the notions of prosecutorial and executive discretion.  *Sibley*, 2019 WL 1305069, at *6. According to the court in *Sibley*, "the government's decision to dismiss a *qui tam* case is tantamount

---

[12] The Court would add an additional statement by the Fifth Circuit which further suggests, as held by the *Sibley* court, 2019 WL1305069, at *5, the "Fifth Circuit has all but explicitly stated that the government's decision to dismiss a *qui tam* false claim case is its choice alone."  *See U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 358 (5th Cir. 2003) ("As recognized by our case law and the clear language of the statute, the suit is brought for the government and on behalf of the government, which will ultimately retain the lion's share of the proceeds and retains the unilateral power to dismiss the case at any time notwithstanding the objections of Mayfield and regardless of its decision not to intervene."), *abrogated on other grounds by Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007).

to the government's decision not to bring the action at all, and the Court should give it the same deference."[13] *Id*. (citing *Swift*, 318 F.3d at 252). "The general rule that such decisions are unsuitable for judicial review must hold." *Sibley*, 2019 WL 1305069, at *6 (citing *Heckler*, 470 U.S. at 832-834).

Because the text of the statute and the case law establish § 3730(c)(2)(A) gives the government virtually unfettered discretion to dismiss a False Claims Act action brought by a relator in its name, the Court recommends the government's motions to dismiss be granted.[14] *Sibley*, 2019 WL 1305069, at *7.

## C.  Dismissal is warranted even under the *Sequoia Orange* standard

As the court in *Sibley* held, even if § 3730(c)(2)(A) does not permit the government unfettered discretion to dismiss *qui tam* actions, the government would still meet its burden to justify dismissal of the above cases.  2019 WL 1305069, at *8 (holding that even if the *Sequoia Orange* standard governed, the government had stated a valid government purpose and dismissal of the case was rationally related to that purpose). The *Sequoia Orange* standard is not "particularly arduous."

---

[13] According to the court in *Sibley*, to "treat it otherwise would go against the spirit, if not the letter, of the Fifth Circuit's decision in *Riley*." 2019 WL 1305069, at *6. The court noted a "critical factor in the [Fifth Circuit's] determination that the *qui tam* provisions of the False Claims Act did not violate the separation of powers doctrine was that the government still had the power to dismiss the suit." *Id*. (citing *Riley*, 252 F.3d at 753).

[14] According to the Minnesota district court in *U.S. ex rel. Davis v. Hennepin County*, the "standard of review" is a simple two-part inquiry: (1) was the relator notified of the motion? and (2) did the relator have an opportunity for a hearing?  2019 WL 608848, at *5. Applying this "two-part statutory standard" here, it is clear Relators were notified of the government's motions and received the opportunity for a hearing. 2019 WL 608848, at * 6.  According to the *Davis* court, the statute requires nothing more or less.  *Id.*

*Id.* (quoting *Nasuti*, 2014 WL 1327015, at * 10; *Wickliffe*, 473 Fed. Appx. at 853 (describing the *Sequoia Orange* standard as only "slightly more restrictive" than the *Swift* standard)).

A two-step analysis applies: first, the government must identify a valid government purpose; and second, there must be a rational relationship between dismissal and accomplishment of the purpose. *Sibley*, 2019 WL 1305069, at *8 (citing *Sequoia Orange*, 151 F.3d at 1145). "[T]o establish a rational relation to a valid governmental purpose, there need not be a tight fitting relationship between the two; it is enough that there are plausible, or arguable, reasons supporting the agency decision." *Ridenour*, 397 F.3d at 937 (internal quotations omitted). Once the government satisfies that test "the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Id.*

Here, the government advances the following reasons for dismissal.  As an initial matter, the government asserts, based on its "extensive investigation of all of the various [NHCA Group *qui tam* action] complaints, the government has concluded that the relators' allegations lack sufficient factual and legal support.  Mots. to Dismiss at 14.  According to the motions, the government's investigations included, among other things, the collection and review of tens of thousands documents from the defendants and third parties and interviews of numerous witnesses, including prescribing physicians. The government also had extensive discussions with Relators' counsel and reviewed various information they provided. *Id*. In addition, the government consulted with subject-matter experts about the relators' allegations and the applicability of regulatory safe harbors and government-issued industry guidance. *Id.* at 14-15. To date, DOJ attorneys in the Civil Division's Fraud Section have collectively spent more than 1,500 hours on the NHCA Group matters filed nationwide. *Id.* at 15, n. 5.

As a result, the government has concluded that further expenditure of government resources is not justified. Because Relators allege nationwide misconduct involving Medicare, Medicaid, and TRICARE over at least a six-year period, the government will incur substantial costs in monitoring the litigation and responding to discovery requests. According to the government, the vast scope of the allegations will necessarily yield substantial litigation burdens for the United States, including the expense of collecting, reviewing, processing, and producing documents from among multiple federal healthcare programs, as well as voluminous prescription drug event data and patient health information for potentially thousands of beneficiaries, which, due to its sensitive nature, may require additional (and costly) screening and redaction. *Id.* at 15. Moreover, the government will also have to spend considerable time preparing numerous agency witnesses for depositions and filing statements of interest relating to a variety of legal issues. *Id.*

Concerns about the burden on government resources are valid, even if relators assumed all of the expense of prosecuting the FCA cases. *U.S. ex rel. Sequoia Orange Co. v. Sunland Packing House Co.*, 912 F. Supp. 1325, 1346 (E.D. Cal. 1995), *aff'd sub nom. U.S. ex rel., Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1146 (9th Cir. 1998) (noting, on appeal, the district court properly noted the government can legitimately consider the burden imposed on the taxpayers by its litigation, and that, even if the relators were to litigate the FCA claims, the government would continue to incur enormous internal staff costs).  In *Sibley*, the court recognized conserving government resources was a legitimate government interest.  2019 WL 1305069, at *8 (noting the government must still monitor the litigation even though it had elected not to intervene). The court in the *Serono* case, which is related to the cases before the Court, also held under the

*Sequoia Orange* standard that the government had articulated a legitimate interest and dismissal would accomplish that interest.[15]  2019 WL 1468934, *4.

Here, the government has rationally concluded, based on its investigation of relators' various cases that the relators' allegations are unlikely to yield any recovery sufficient to justify the significant costs and burdens that the government will incur if the cases proceed and the resulting diversion of the government's limited resources away from other more meritorious matters.  In addition, the government has concluded that the specific allegations in these cases conflict with important policy and enforcement prerogatives of the federal government's healthcare programs. "There is certainly precedent for this cost-benefit analysis being a legitimate governmental reason and that dismissal is rationally related to that objective."  *Davis*, 2019 WL 608848, at *7 (citing *Sequoia Orange*, 151 F.3d at 1146 (referring to "internal staff costs" (citation omitted)); *e.g., U.S. ex rel. Stovall v. Webster Univ.*, No. 3:15-cv-03530, 2018 WL 3756888, at *3 (D.S.C. Aug. 8, 2018) (recognizing the Government's "interest in preserving scarce resources by avoiding the time and expense necessary to monitor this action" and rejecting the relator's argument that "the anticipated financial gain outweighs the anticipated time and money to be expended on this case"); *U.S. ex rel. Nicholson v. Spigelman*, No. 10-cv-3361, 2011 WL 2683161, at *2 (N.D. Ill. July 8, 2011) (crediting the Government's proffered cost-benefit analysis and position that proceeding would "cost the United States more in expenses than it can possibly recover")).

---

[15] Similar to these cases, the government in *Serono* asserted it had a valid interest in avoiding litigation costs in a case that lacked sufficient factual and legal support; after extensive investigation, the case was unlikely to yield a recovery justifying the costs and burdens it would incur if the case proceeded; after having already expended substantial time and resources, the government concluded it was better to use its resources pursuing other claims; and the relators' allegations "conflict[ed] with important policy and enforcement prerogatives of the federal government's healthcare programs."  2019 WL 1468934, *4.

Having satisfied the rational relation test, the burden shifts to Relators to demonstrate the dismissal is "fraudulent, arbitrary and capricious, or illegal." *Sequoia Orange*, 151 F.3d at 1145. Although Relators concede the government has discretion, they argue under the *Sequoia Orange* standard the government has exercised its discretion in an arbitrary and capricious manner.  Tr. at 23:24-27:20.  Relators argue "the government has sought to mislead the Court by misrepresenting the nature and scope of its supposed 'investigation' into Relators' [sic] allegations."  Surreply at 6.

Specifically, Relators assert they do not believe the government investigated their allegations because the government informed Relators' counsel that the United States would decline intervention on October 27, 2017, only six weeks after the September 13, 2017 government's meeting with Relators' representative and Relators' counsel regarding the allegations at issue in the *Lilly* and *Bayer* cases.[16]  Responses at 24.  Relators assert the government's claims of having conducted an "extensive investigation" in these cases are inaccurate, noting the government appears not to have collected any documents from the defendants during its six-week purported investigation.  Surreplies at 1.

The government explains prior to declination it had already spent considerable time investigating substantially the same allegations that NHCA Group had filed in several other districts,

_____

[16] The United States moved the Court for an *ex parte* order granting a six-month extension of time, to and including February 26, 2018, in which to continue the investigation of the allegations in Relators' complaints and to make an election whether or not to intervene in the above litigation. Relators filed a response in partial opposition to the United States' motions, asserting the seal period should be extended by only sixty days. According to Relators, in the vast majority of cases, the original sealing period of sixty days is an adequate amount of time to allow Government coordination, review, and decision. Relators asserted they made their allegations known to the United States well in advance of the filing of the complaints in mid-June 2017. Relators further asserted there was urgency in having the matters proceed. The Court only extended the time for the government to make an election decision by sixty additional days.  (Cause No. 5:17-cv-123, Docket Entry # 7) (Cause No. 5:17-cv126, Docket Entry # 6).

implicating some of the same defendants, the same legal issues, and the same industry practices. Replies at 7. The government further represents it continued to evaluate these particular *qui tam* cases after declination, including having extensive discussions with Relators about the allegations and supporting evidence. *Id.* According to the government, Relators were provided a substantial opportunity before the government moved to dismiss to address the government's concerns regarding further litigation; the government carefully considered Relators' input but concluded Relators' litigation on behalf of the government was not in the public interest and should be dismissed. *Id.* at 9.

In *Serono*, the relators argued the government did not do its "due diligence" in investigating the case to understand the merits. 2019 WL 1468934, at *5. The relators argued the real reason for the government's moving to dismiss was its dislike of the corporate relator as a "professional relator." *Id.* Although the court in *UBC* found the proffered reasons for the government's decision to dismiss were pretextual and the true motivation was animus toward the relator, 2019 WL 1598109, at *4, the *Serono* court held the relators failed to show the government's decision was arbitrary and capricious. 2019 WL 1468934, at *5. The *Serono* court noted the government had invested significant time and resources investigating the relators' claims over a lengthy period of time, and eight United States Attorneys' Offices had concluded the allegations in each of the cases lacked sufficient factual and legal support to justify the cost of the litigation and that the allegations

in the case conflicted with public policy interests.[17]  *Id*.  Like the court in *Serono*, the Court is satisfied the government has fully investigated the claim.  *Id*.

"Conserving costs and promoting educational services are rationally related to accomplishing legitimate governmental interests in redirecting money and resources to other claims while benefitting [sic] the government's healthcare programs and their recipients. These are legitimate governmental interests." *Id*. (citing *Ridenour*, 397 F.3d at 936 (quoting *Sequoia*, 151 F.3d at 1145) ("rational relation" need not be "tight fitting relationship" and is established with "plausible, or arguable, reasons supporting the agency decision.")). According to the *Serono* court, which applied the *Sequoia Orange* standard, "[l]ike any other plaintiff in a civil case, the government has the option to end litigation it determines is too expensive or not beneficial." *Serono*, 2019 WL 1468934, at *5.

Preserving litigation costs is a valid interest even where the claims may have merit. *Id.* at *6 (citing *Sequoia*, 151 F.3d at 1146 ("government can legitimately consider the burden imposed on the taxpayers by its litigation, and that, even if the relators were to litigate the FCA claims, the government would continue to incur enormous internal staff costs."); *Swift*, 318 F.3d at 254 ("the government's goal of minimizing its expenses is still a legitimate objective, and dismissal of the suit furthered that objective.")). The "potential merit of a qui tam action is insufficient to overcome the

---

[17] In *UCB*, the court held the government's collective investigation of the eleven *qui tam* cases filed by the NHCA Group fell short of a minimally adequate investigation to support the claimed governmental purpose. 2019 WL 1598109, at *3. Here, the Court is unpersuaded the government failed to adequately investigate to support its claimed purposes for dismissal or that it attempted to deceive the Court, as urged by Relators. Nor does the Court find the government's proffered reasons for the decision to dismiss pretextual.  The Court finds, as in *Serono*, that the "reasons given by the government are not a cover for an illegitimate reason and do not mask an animus toward the corporate relator. They are concerns that any party to litigation may have when deciding whether to continue pursuing a case." 2019 WL 1468934, at *6.

government's rational reasons for dismissing the suit." *Wickliffe*, 473 Fed. Appx. at 854; *see also Sequoia Orange*, 151 F.3d at 1143-44 (even "a meritorious suit may be dismissed upon a proper showing [by the government]"); *Ridenour*, 397 F.3d at 930 (dismissal warranted even when government conceded relators' suits were meritorious).

The decision to dismiss the cases before the Court is rationally related to the valid governmental purpose of preserving resources for other litigation and protecting the government's healthcare programs. *Serono*, 2019 WL 1468934, at *6. Relators raise several other arguments in support of their claim the government's decision to dismiss is arbitrary, but none of these arguments are persuasive.

In *Sibley*, the court rejected the relator's argument that the United States was required to present "evidence of a cost-benefit analysis," concluding even under *Sequoia Orange* "it is not the government's burden to provide evidence of its state[d] reason." 2019 WL 1305069, at *9 (citing *Nasuti*, 2014 WL 1327015, at *12) (citing *Ridenour*, 397 F.3d at 937). Citing to other district courts within the Fifth Circuit, the court held the relator was not entitled to discovery or an evidentiary hearing into the government's stated reasons for dismissal. *Id.* at *9. ("As numerous courts have held, the hearing requirement is satisfied by allowing the relator an opportunity to submit a response to the motion.") (internal quotations and citation omitted).

Like the *Sibley* court, the Court finds Relators fail to present a "colorable claim that dismissal would be unreasonable, arbitrary, or an abuse of discretion." 2019 WL 1305069, at *6. Accordingly, under *Sequoia Orange* as under *Swift*, dismissal is warranted. *See Davis*, 2019 WL 608848, at *7 (citing *Nicholson*, 2011 WL 2683161, at *3) ("The government's cost-benefit calculation may be sound or it may be short-sighted, but it cannot be deemed arbitrary and capricious."); *see also*

*Serono,* 2019 WL 1468934, at *6 (stating the "government is entitled to do a cost / benefit analysis to decide whether to pursue a case, even a meritorious one").

## V. RECOMMENDATION

For theses reasons, the Court holds that under the FCA the government possesses the virtually unfettered discretion to dismiss a suit brought by a relator. However, even under a more stringent rational relation standard, the Court finds the government has met its burden.  Accordingly, it is

**RECOMMENDED** that The United States' Motion to Dismiss Relator's Second Amended Complaint (Cause No. 5:17-cv-123, Docket Entry # 192) be **GRANTED**.  It is further

**RECOMMENDED** that The United States' Motion to Dismiss Relator's Second Amended Complaint (Cause No. 5:17-cv-126, Docket Entry # 116) be **GRANTED**. It is further

**RECOMMENDED** the above-entitled and numbered causes of action be dismissed with prejudice as to Relators and without prejudice as to the United States pursuant to 31 U.S.C. § 3730(c)(2)(A) and without prejudice as to all named plaintiff states.

## Objections

Within fourteen (14) days after receipt of this Report and Recommendation, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A. 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 16th day of May, 2019.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE