# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| HEALTH CHOICE ALLIANCE LLC, EX REL ON BEHALF OF UNITED STATES OF AMERICA AND 31 STATES (AR; CA; CO;CT; DE; DC; FL; GA; HI; IL; IN; IA; LA; MD; MA; MI; MN; MT; NV; NH; NJ; NM; NY; NC; OK; RI; TN; TX; VT; VA; WA); | §§§§§§§§ | CIVIL ACTION NO. 5:17-CV-00123-RWS-CMC |
| Plaintiff, | §§ | |
| v. | §§ | |
| ELI LILLY AND COMPANY, INC., VMS BIOMARKETING, COVANCE, INC., UNITED BIOSOURCE CORPORATION, HEALTHSTAR CLINICAL EDUCATION SOLUTIONS LLC, COVANCE MARKET ACCESS SERVICES, INC., | §§§§§§§ | |
| Defendants. | §§§ | |

| | | |
|---|---|---|
| HEALTH CHOICE GROUP, LLC, ON BEHALF OF UNITED STATES OF AMERICA AND 31 STATES (AR;CA;CO;CT;DE;FL;GA;HI;IL;IN;IA;LA;MD;MA;MI;MN;MT;NV;NH;NJ;NM;NY;NC;OK;RI;TN;TX;VT;VA;WA; | §§§§§§ | CIVIL ACTION NO. 5:17-CV-00126-RWS-CMC |
| Plaintiff, | §§§ | |
| v. | §§ | |
| BAYER CORPORATION, AMGEN INC., ONYX PHARMACEUTICALS, INC., AMERISOURCEBERGEN CORPORATION, LASH GROUP, | §§§§§ | |
| Defendants. | §§§ | |

# ORDER

Health Choice Alliance LLC, on behalf of the United States of America and 31 States, filed the above-titled *qui tam* actions under 31 U.S.C. §§ 3729 and 3730(b)(1)—the False Claims Act—and various state false claim statutes. This Court referred the case to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

The United States (the "Government") moved to dismiss under 31 U.S.C. § 3730(c)(2)(A). Docket No. 192.[1] In its Amended Report and Recommendation—Docket No. 241—the Magistrate Judge recommended granting the United States' Motion. Health Choice objected. Docket No. 243. The Court hereby **ADOPTS AS MODIFIED** the Magistrate Judge's Recommendations and **OVERRULES** Health Choice's objections. Also, the Court hereby **DISMISSES WITH PREJUDICE** Health Choice's claims on behalf of the United States, **DISMISSES WITHOUT PREJUDICE** Health Choice's claims on behalf of the 31 States and **DISMISSES WITHOUT PREJUDICE** the FCA claims as to the United States.

## BACKGROUND

Health Choice alleges the Defendants knowingly induced the submission of false claims for reimbursement to government healthcare programs using unlawful remuneration. *See* False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA"). Specifically, Health Choice claims Defendants violated the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), and various state statutes through three alleged schemes: free nurse services, white coat marketing and reimbursement support services.

---

[1] The Government filed the same motion to dismiss—and the Magistrate Judge entered the same Report and Recommendation—in both above-titled cases. Also, the parties filed identical objections and responses to those Reports and Recommendations. Without loss of generality, the Court only cites the filings in Civil Action No. 5:17-cv-000123, the Eli Lily case.

Initially, per 31 U.S.C. § 3730(b)(2), Health Choice filed its complaints under seal. Docket No. 1. But, after the Government declined to exercise its statutory right to intervene, § 3730(b)(2), those complaints were unsealed. Docket No. 9. Before Defendants answered, Health Choice filed its First Amended Complaints, which were dismissed without prejudice under Federal Rule of Civil Procedure 12(b)(6). Docket No. 164. Health Choice again amended its complaints, adding factual support. Docket No. 172. The Government now moves to dismiss all FCA claims with prejudice as to Health Choice and without prejudice as to the United States pursuant to 31 U.S.C. § 3730(c)(2)(A). Docket No. 192.

## REPORT AND RECOMMENDATION

The Magistrate Judge initially entered her Report and Recommendation recommending the Court dismiss Health Choice's claims under § 3730(c)(2)(A). Docket No. 232. But, Health Choice moved for clarification of the Magistrate Judge's recommendation, particularly whether the Magistrate Judge recommended dismissing Health Choice's state-law claims with prejudice. Docket No. 235. Granting that motion, the Magistrate Judge amended its Report and Recommendation, clarifying that it only recommended dismissing the state-law claims without prejudice. Docket No. 241. As amended, the Reports and Recommendations make three moves: (1) reviewing case law interpreting § 3730(c)(2)(A), (2) finding the Government has "unfettered discretion" to dismiss an FCA claim under § 3730(c)(2)(A), and (3) in the alternative, finding the Government satisfied the more rigorous *Sequoia Orange* review standard.

### I. Legal Background

The Magistrate Judge first walked through the fractured landscape of cases interpreting § 3730(c)(2)(A). *Id.* at 9–21. Primarily, the Magistrate Judge identified a circuit split over the § 3730's dismissal standard. *Id.* at 9–16. On one hand, the United States Court of Appeals for the

District of Columbia Circuit held the Government has "unfettered discretion" to dismiss FCA claims. *Id.* at 12–14 (citing *Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003)). To that court, § 3730(c)(2)(A)'s text—providing the Government "may dismiss" an FCA *qui tam* action after a hearing without additional qualification—and the executive branch's well-established prosecutorial discretion preclude judicial review. *Id.* And that court held that legislative history—suggesting a relator can object to the Government "dropping . . . false claims cases without legitimate reasons"—was not to the contrary because that suggestion related to an unenacted version of § 3730. *Id.* at 13.

On the other hand, the United States Courts of Appeal for the Ninth and Tenth Circuits held that Government must "identify a valid government purpose and a rational relation between dismissal and accomplishment of the purpose." *Id.* at 9–12, 12–15 (citing *Ridenour v. Kaiser-Hill Co., Ltd. Liab. Co.*, 397 F.3d 925, 935 (10th Cir. 2005); *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Co.*, 151 F.3d 1139 (9th Cir. 1998)). Then, the burden shifts to the relator to show the Government's dismissal is "arbitrary, capricious, or illegal." *Id.* The Ninth Circuit found support in § 3730's legislative history and dismissed separation of powers concerns based on "the district court . . . respect[ing] the executive branch's prosecutorial authority by requiring no greater justification of the dismissal motion than is mandated by the Constitution itself." *Id.* at 11. The Tenth Circuit similarly found *Sequoia Orange*'s standard "comports with legislative history and protects the right of relator to judicial review of a government motion to dismiss." *Ridenour*, 397 F.3d at 936. No other circuit—the United States Court of Appeals for the Fifth Circuit included—has directly addressed this issue.

Fleshing out the fractured legal landscape, the Magistrate Judge reviewed similarly divided district court opinions. Docket No. 241 at 16–21. Some courts—like this Court in *United States*

*ex rel. Wright v. AGIP Petroleum Co.*, No. 5:03-CV-264-DF, 2005 WL 8167952, at *2 (E.D. Tex. Feb. 3, 2005)—have declined to address the issue, finding the Government met the more arduous *Sequoia Orange* burden. *Id.* at 16–17. Some have followed *Swift*, *see United States ex rel. Sibley v. Delta Reg'l Med. Ctr.*, No. 4:17-CV-53, 2019 WL 1305069, at *4 (N.D. Miss. Mar. 21, 2019), applying the unfettered discretion standard. And others have followed *Sequoia Orange*, *see United States v. EMD Serono, Inc.*, 370 F. Supp. 3d 483, 488 (E.D. Pa. 2019) (substantially the same allegations as here), applying the rational relationship standard. *Id.* at 17–19.

## II.    Dismissal Standard

With this background established, the Magistrate Judge next addressed the proper standard for dismissal under § 3730(c)(2)(A). *Id.* at 21–27. Ultimately, she concluded that the Fifth Circuit would likely follow the D.C. Circuit and hold that the Government has "unfettered discretion" to dismiss FCA claims. *Id.* at 24. For support, the Magistrate Judge looked to the text and structure of § 3730, related Fifth Circuit precedent and general separation-of-powers principles. *Id.* at 22–23.

The Magistrate Judge found that the text of § 3730(c)(2)(A) supports the Government's unfettered discretion. *Id.* at 21–22. Section 3730(c)(2)(A), in relevant part, provides the Government authority to dismiss a FCA *qui tam* action "notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." To the Magistrate Judge, the statute's failure to set a standard for dismissal—other than requiring "an opportunity for a hearing"—suggests that the Government has unfettered discretion to dismiss an action under § 3730(c)(2)(A). *Id.* at 21–22. The Magistrate Judge also noted that hearing would not be rendered superfluous under an unfettered discretion framework. *Id.* at 19 n.9. The absence

of a standard in subsection (c)(2)(A) is further highlighted by the presence of standards in other subsections of § 3730. *Id.* at 23–24. For example, 31 U.S.C. § 3730(c)(2)(B) provides "[t]he Government may settle the action . . . notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances."

Additionally, the Magistrate Judge relied on related Fifth Circuit precedent. *Id.* at 24–27. Twice, the Fifth Circuit has mentioned the Government's "unilateral" power to dismiss an FCA *qui tam* action. *Searcy v. Philips Electronics N. Am. Corp.*, 117 F.3d 154, 160 (5th Cir. 1997); *Riley v. St. Luke's Episcopal Hosp.*, 262 F.3d 749, 754 (5th Cir. 2001). In *Searcy*, the Fifth Circuit used § 3730(c)(2)(A)'s language to support a less "radical" exercise of governmental control over a *qui tam* action: the Government's veto power over settlements, without intervention. *Searcy*, 117 F.3d at 160. And, in *Riley*, the Fifth Circuit used the Government's dismissal power—also calling that power "unilateral"—to establish the Government's control over *qui tam* action, obviating separation of powers concerns. *Riley*, 262 F.3d at 754. The Magistrate concluded this precedent suggests the Fifth Circuit would hold § 3730(c)(2)(A) provides the Government with a standard-less right to dismiss. Docket No. 241 at 24–26.

Finally, the Magistrate Judge found the "unfettered discretion" standard to be consistent with the Government's prosecutorial and executive discretion. *Id.* at 26–27. Traditionally, prosecutorial decisions are unsuitable for judicial review. *Id.* And the Government's decision to dismiss a *qui tam* action—given that the Government does not initially file that action—is analogous to a decision not to bring the action at all—that is, prosecutorial discretion. *Id.* So, the Government's decision to dismiss under § 3730(c)(2)(A) should similarly be unsuitable for judicial review, giving the Government "unfettered discretion." *Id.*

Applying *Swift*'s unfettered discretion analysis, the Magistrate Judge recommended dismissal. Health Choice was provided notice and an opportunity to be heard. Docket No. 227 (minute entry for April 24, 2019 hearing). And that satisfies the statutory test. Docket No. 241 at 27 n.15.

### III.    *Sequoia Orange* **Analysis**

In the alternative, the Magistrate Judge considered whether the Government has made a showing sufficient to survive *Sequoia Orange*'s more searching judicial review. *Id.* at 27–32. Though undoubtably more rigorous than the *Swift* standard, *Sequoia Orange*'s standard is not "particularly arduous." *Id.* at 27. In fact, *Sequoia Orange*'s standard is only "slightly more restrictive." *Id.* at 28. Initially, the Government must make two showings: (1) identification of a valid government purpose and (2) demonstration of a rational relationship between dismissal and accomplishment of that purpose. *Id.* Then, the burden shifts to Health Choice to show the Government's decision was in fact "fraudulent, arbitrary and capricious, or illegal." *Id.* The Magistrate Judge ultimately concluded that the Government satisfied *Sequoia Orange*'s more arduous standard and recommended dismissal on that basis. *Id.* at 34.

First, the Magistrate Judge found the Government identified a legitimate governmental purpose. Predominately, the Magistrate Judge relied on precedent. *Id.* at 29. In *Sequoia Orange*, the Ninth Circuit held that the Government can properly consider costs associated with *qui tam* litigation, even when the relator is litigating those claims. *Sequoia Orange*, 151 F.3d at 1146. The court in *Sibley* similarly found that conserving governmental resources is a legitimate government purpose, even when the Government has not intervened. *Sibley*, 2019 WL 1305069 at *8.

Second, the Magistrate Judge found the Government's dismissal decision was rationally related to that legitimate government purpose. *Id.* at 30. The Government investigated Health

Choice and related entities' various FCA claims and concluded those claims are unlikely to lead to recovery. *Id.* Thus, the Government concluded that Health Choice's claims do not justify the expenditure of scarce government resources. *Id.* The Magistrate Judge, citing various district court cases, found that this cost-benefit analysis was rationally related to the Government's legitimate purpose for dismissal. *Id.* Like any plaintiff, the Government has the option to end litigation it determines is too expensive or not beneficial. *Id.* Even where the claims may have merit, the Government's dismissal can be relationally related to preserving governmental resources. *Id.* That is, the potential merit of a *qui tam* action—alone—does not make the Government's decision irrational. *Id.*

Finally, the Magistrate Judge found Health Choice failed to show the Government's decision to be "fraudulent, arbitrary and capricious, or illegal." *Id.* at 31–32. Specifically, it rejected Health Choice's allegations that the government "misle[d] the Court by misrepresenting the nature and scope of its" investigation into Health Choice's claims. *Id.* Similarly, the Magistrate Judge rejected Health Choice's assertion that the Government was required to provide evidence of its cost-benefit analysis. *Id.* It is simply not the Government's burden to provide that evidence. *Id.* Those allegations did not present a colorable claim that dismissal would be unreasonable, arbitrary or an abuse of discretion. *Id.*

## OBJECTIONS AND RESPONSES

Health Choice objected to the Magistrate Judge's Report and Recommendation, Docket No. 243; the Government, in support of the Magistrate Judge's Report, responded. Docket No. 244. In broad strokes, Health Choice objects to (1) the Magistrate Judge's application of the "unfettered discretion" standard (2) the Magistrate Judge's conclusion that the Government satisfied the more arduous *Sequoia Orange* standard. Docket No. 243.

## I.      Objections and Responses to the "Unfettered Discretion" Standard Conclusion

Health Choice objects to each stage of the Magistrate Judge's statutory interpretation. Docket No. 243 at 2–6. It primarily argues the Magistrate Judge should have interpreted § 3730(c)(2)(A) using a presumption in favor of judicial review. *Id.* at 3–4. To Health Choice, § 3730(c)(2)(A)'s text, related Fifth Circuit precedent and traditional notions of prosecutorial discretion do not overcome this presumption; and in fact, § 3730(c)(2)(A)'s legislative history supports judicial review. *Id.* at 4–5. Thus, Health Choice claims the "unfettered discretion standard," which does not provide judicial review, is inappropriate. *See id.* The Government responded, supporting the Report and Recommendation. *See* Docket No. 244.

### a.      Presumption of Judicial Review

Health Choice, throughout its objections, argues that there is a strong presumption in favor of judicial review. Citing decisions under the Administrative Procedure Act (APA), Health Choice claims "judicial review of administrative agency decision has long been a part of this nation's common law . . . ." Docket No. 243 at 3–4. So, unless the Government can overcome that presumption, the *Sequoia Orange* standard—which allows for judicial review—should apply. *Id.* at 3. To overcome that presumption, the Government must show clear and convincing evidence that Congress intended to restrict access to judicial review. *Id.* at 4.

In response, the Government argues that the APA—and the presumptions that come with it—does not apply to its dismissal decision. Docket No. 244 at 5–6. Relatedly, the Government argues that Health Choice's requested judicial review would run afoul of separation of powers, allowing the judiciary to review the executive branch's prosecutorial discretion. *Id.* at 2.

### b.      Section 3730(c)(2)(A)'s Text & Legislative History

Health Choice disagrees with the Magistrate Judge's reading of § 3730(c)(2)(A)'s text. Docket No. 243 at 2, 4–5. Rather than suggesting unfettered discretion, as the Magistrate Judge found, Health Choice argues the text "expressly allows for judicial review." *Id.* at 4. Health Choice focuses on § 3730(c)(2)(A)'s hearing requirement—""if . . . the court has provided [the realtor] with an opportunity for a hearing on the motion." *Id.* at 4–5. If unfettered discretion applied, Health Choice claims this hearing would be rendered superfluous. *Id.* To Health Choice, the alternative purposes—to provide a formal opportunity to convince the Government to withdraw its dismissal and to expose the Government's decision to the public—are ineffectual. *Id.* at 5. The Government disagrees, arguing the hearing's alternative purposes are generally valuable and the hearing in this case was not meaningless. Docket No. 244 at 2–3.

Health Choice additionally argues the legislative history of § 3730(c)(2)(A) supports judicial review. Docket No. 243 at 5. The FCA was amended in 1986, and one Senate Report related to those amendments suggests an evidentiary hearing on a relator's objections to dismissal is appropriate when "the Government's decision was on arbitrary and improper considerations." *Id.* Health Choice reads this Report as indicating Congress intended judicial review when crafting § 3730(c)(2)(A). *Id.* The Government, on the other hand, argues the legislative history is not so clear. Docket No. 244 at 4. Immediately after the portion Health Choice cites, the same Senate Report recognizes the importance of respecting executive branch prosecutorial decisions. *Id.* at 4.

### c. Fifth Circuit Precedent

Health Choice further disagrees with the Magistrate Judge's reading of *Riley* and *Searcy*—two Fifth Circuit opinions. Docket No. 243 at 1–2. It argues those opinions addressed different questions, and do not even "amount to . . . dicta indicating that the Fifth Circuit would apply *Swift*." *Id.* The Government does not respond to this objection.

### d. Prosecutorial Discretion

Health Choice objects to the Magistrate Judge's reliance on the Government's prosecutorial discretion to justify applying the "unfettered discretion" standard. *Id.* at 3, 5–6. In fact, Health Choice claims the *Swift* itself was wrongly decided. *Id.* at 3. To Health Choice, that opinion violates the well-established principles of judicial review, and the Fifth Circuit would likely adopt *Sequoia Orange* for this very reason. *Id.* Moreover, the concept of prosecutorial discretion does not transfer to *qui tam* actions because a relator is empowered to bring an action on behalf of the Government without intervention. *Id.* at 5–6. And, in *qui tam* actions, at least those that have survived a Federal Rule of Civil Procedure 12(b)(6) challenge, the Government's dismissal harms the relator. *Id.* This harm triggers the presumption of judicial review. *Id.* at 6. The Government responds that judicial review of the Government's dismissal decision is inconsistent with prosecutorial discretion. Docket No. 244 at 2. And, the Government further responds that Health Choice's alleged injury—resulting from dismissal—is not cognizable. *Id.* 4–5. After all, the Government's action here is not "the most egregious executive action" that "shocks the conscience." *Id.* at 5.

## II.    Objections and Responses to the *Sequoia Orange* Analysis

Health Choice next objects to the Magistrate Judge's conclusion that the Government satisfied the more arduous *Sequoia Orange* standard. Docket No. 243 at 6–8. Initially, Health Choice argues the Government does not have a valid interest in allowing a plausible kickback scheme to continue unabated. *Id.* at 6. For support, Health Choice cites to *United States ex rel. CIMZNHCA, LLC v. UCB, INC.*, No. 17-CV-765-SMY-MAB, 2019 WL 1598109, at *1 (S.D. Ill. Apr. 15, 2019) ("*UBC*"). *Id.* There, the court denied the Government's motion to dismiss substantially similar FCA claims, applying *Sequoia Orange* and finding the Government's

decision arbitrary. *Id.* That Court found "no rational relationship between the Government's expressed policy interest in the enforcement prerogatives of its healthcare programs and dismissal of this case." *Id.* The court additionally found those policy justifications "curious at best," given the nature of the relator's claims. *Id.*

Otherwise, Health Choice asserts the Government's decision to dismiss its case is arbitrary and capricious for three reasons: (1) the Government arbitrarily violated separation of powers, (2) the Government arbitrarily changed its justifications for dismissal and (3) animus motivated the Government's dismissal decision. *Id.* at 6–8.

First, Health Choice claims the Government abused its discretion—or perhaps the Government's dismissal decision was illegal—because it violates notions of separation of powers. *Id.* at 6. Fundamentally, the Health Choice argues the Government, as the executive branch, is engaged in functions reserved for the judicial and legislative branches. *Id.* With respect to the judicial branch, Health Choice points to the Court's role interpreting the law. *Id.* To Health Choice, when the Government evaluated the merits of Health Choice's *qui tam* action— particularly after that claim survived a Rule 12(b)(6) challenge—it invaded the purview of this Court. *Id.* With respect to the legislative branch, Health Choice views the Government's dismissal decision as rewriting the AKS statute. *Id.* Because Health Choice's claims survived summary judgment, they are legally sufficient. *Id.* And the Government's claims to the contrary— constituting selective enforcement of the AKS statute—are attempts to rewrite the statute. *Id.*

Second, Health Choice argues the Government arbitrarily changed its justifications for dismissal. *Id.* at 7. Health Choice claims the Government initially claimed it was dismissing the case to preserve judicial resources; then, the Government changed its approach, arguing about the merits of Health Choice's claims. *Id.* Health Choice additionally argues the Government's

decision to dismiss based on deposition hours is arbitrary because the actual deposition hours that will occur is far fewer than the previously-agreed-to number. *Id.* at 8. Health Choice finds another arbitrary change in the Government's attitude toward Health Choice's corporate structure. *Id.* at 7–8. Initially, to Health Choice, the Government disparaged Health Choice's corporate structure; but at oral argument, it applauded Health Choice for bringing *qui tam* actions. *Id.*

Third, Health Choice claims animus is the real reason the Government dismissed Health Choice's claims. And, as the court found in *UBC*, animus is not a legitimate government purpose. *Id.*

The Government, rather than responding to each objection, asserts the Magistrate Judge correctly concluded that dismissal is warranted under *Sequoia Orange*. Docket No. 244 at 3. It claims to have proffered legitimate governmental reasons—the preservation of resources and avoiding chilling important education and support programs. *Id.* And the Government claims Health Choice has not shown those reasons to be fraudulent, arbitrary and capricious, or illegal. *Id.* Finally, it notes the Magistrate Judge found the Government's first reason for dismissal— preservation of resources—to be sufficient on its own, declining to consider the chilling argument.

## LEGAL STANDARDS

"[T]he court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). After review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

## DISCUSSION

### I. Claims on Behalf of the United States

Because the Government satisfies *Sequoia Orange*'s more arduous burden, it may dismiss Health Choice's claims. The Government has a legitimate interest in preserving its resources, and its dismissal in this case is rationally related to that interest. There is no evidence, beyond speculation, that the Government's decision to dismiss Health Choice's claims was "fraudulent, arbitrary and capricious, or illegal," nor is there evidence that animus motivated the Government's decision.

Preserving scarce resources is a legitimate governmental interest. Both *Sequoia Orange* and *Ridenour* held as much, and Health Choice does not contest this point. *See Ridenour*, 397 F.3d at 937; *Sequoia Orange*, 151 F.3d at 1146. Notably, the Fifth Circuit—albeit in a different context—has suggested controlling costs is a compelling governmental interest. *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) ("Based on the record before us, we hold that this policy is related to maintaining good order and controlling costs and, as such, involves compelling governmental interests.").

Dismissing Health Choice's claims is rationally related to that interest. If Health Choice's claims survived, the Government would be required to expend resources. Primarily, the Government would need to make employees available for depositions. Those depositions would burden the deponents and the Government attorneys required to defend them. While Health Choice disputes the number of depositions required, Docket No. 243 at 8, it does not claim the Government will not be burdened—just contests the extent of that burden. The Government would also need to expend resources monitoring Health Choice's claims. But, if the Government dismisses Health Choice's claims, it will not have to expend those resources. That is a rational relationship: dismissal reduces Governmental burdens. *See United States v. EMD Serono, Inc.*, 370 F. Supp. 3d 483, 491 (E.D. Pa. 2019) (finding same).

Health Choice has not shown that the Government's dismissal decision was fraudulent, illegal, motivated by animus, or arbitrary and capricious. The Government's decision was the product of a months-long evaluation. Docket No. 192 at 14–15 (summarizing efforts); *see also* Docket Nos. 214-1, 214-2 (declarations detailing some of the investigative efforts). That investigation was extensive—both in this case and in similar cases filed in other jurisdictions. Docket No. 192 at 14–15. The Government met with Health Choice's leaders and reviewed Health Choice's evidence. *Id.* After this evaluation, the Government moved to dismiss Health Choice's claims, finding the likelihood of Health Choice's success did not justify further expenditure of Government resources. That cost-benefit analysis—even if shortsighted—was not arbitrary. Health Choice questions the actual extent of the Government's analysis, but offers no evidence apart from speculation, that the Government misrepresented the extent of its evaluation. *See* Docket No. 243 at 7.

Health Choice's objections to the contrary are unfounded. First, Health Choice has not pointed to any evidence that the Government moved to dismiss Health Choice's claims in order to "allow[] a plausible kickback scheme to continue unabated" or based on animus toward Health Choice. That is, Health Choice has not shown the purpose on which the Magistrate Judge relied— preservation of resources—is pretextual. For its only support, Health Choice cites *UBC*, 2019 WL 1598109. To be sure, that case involved similar facts: a nearly-identical complaint and motion to dismiss. *Id.* at 1. And the court there found the Government's justifications to be pretextual—*i.e.*, based on animus. *Id.* at 4. But in *UBC*, the Government conceded that the allegations "assert a classic violation of the AKS." *Id.* Here, the Government has made no such concession: the Government has challenged Health Choice on the merits at every stage of its motion. *See* Docket No. 192. Certainly, a substantial portion of the Government's motion to dismiss detailed—and

arguably critiqued—Health Choice's business model.  *Id.* at 2–7.  But that is merely one section of the Government's motion to dismiss.  *See* Docket No. 192.  In the same motion, the Government forwarded its preservation-of-resources argument, which has persisted throughout briefing and oral argument.  *Id.* at 14–16.  And, as Health Choice noted, the Government has disavowed any claims that its decision was made based on animus.  Docket No. 243 at 7.  Health Choice does not attempt to refute this disavowal.

Second, the Government's evaluation of the merits of Health Choice's claims does not violate separation of powers doctrine.  When determining where to expend prosecutorial resources, it is only rational that the Government consider the merits of each case.  It is beyond questioning that the Government can evaluate whether they will be able to secure a conviction when determining whether to pursue criminal charges—*i.e.*, what Health Choice claims to constitute the judicial branch's domain.  As part of that analysis, the Government will often need to determine whether certain conduct violates a statute—*i.e.*, what Health Choice claims to constitute the legislative branch's domain. Neither action violates separation of powers.  And there is no reason to think the Government cannot conduct the same analysis in the *qui tam* context.  Though a relator initiates the claim, a *qui tam* action is on behalf of the Government and the Government retains significant control.  *See Riley*, 262 F.3d at 744 (5th Cir. 2001) (holding Government maintains significant control over action).  Indeed, Health Choice in effect argues the Government cannot evaluate a claim's merit when determining whether to dismiss a *qui tam* action.  That cannot be the case.

Finally, even assuming "constantly changing justifications" are arbitrary—an APA-centric concept—the Government has consistently cited scarce resources as its motivation.  The Government's position on the merits—*i.e.*, that Health Choice is unlikely to recover—is part-and-

parcel of the Government's preservation-of-resources argument. The Government does not want to expend resources on a claim that it believes to lack merit. As detailed above, that is a rational decision.

After careful *de novo* review, the Magistrate Judge's recommendation that the Government has satisfied the *Sequoia Orange* standard is **ADOPTED**. The Magistrate Judge could have granted the Government's Motion to Dismiss solely based on the Government's satisfaction of more burdensome *Sequoia Orange* standard. Because the Court adopts the Magistrate Judge's Report and Recommendation with respect to that analysis, it need not consider the remainder of the Magistrate Judge's Report and Recommendation relating to claims on behalf of the Government or objections thereto.

## II.     Claims on Behalf of the 31 States

Health Choice does not object to dismissal of its state-law claims without prejudice, so the Court reviews those recommendations for clear error. Nonetheless, after careful *de novo* review, the Court agrees with the Magistrate Judge's recommendation of dismissal with respect to the 31 states and **ADOPTS** that recommendation.

## <u>CONCLUSION</u>

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. § 636(b)(1) (district judges shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined the Magistrate Judge's recommendation of dismissal is correct and the Plaintiff's objections to that recommendation are without merit. It is accordingly

**ORDERED** that Health Choice's objections are **OVERRULED** and the Report of the Magistrate Judge (Docket No. 241) is **ADOPTED AS MODIFIED** as the opinion of the District Court. It is further

**ORDERED** that the Government's Motion to Dismiss is **GRANTED** and that Health Choice's claims on behalf of the United States are **DISMISSED WITH PREJUDICE**, Health Choice's claims on behalf of the 31 States are **DISMISSED WITHOUT PREJUDICE** and the United States's claims are **DISMISSED WITHOUT PREJUDICE**.

All other claims for relief are **DENIED AS MOOT**.

**SIGNED this 27th day of September, 2019.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE